(No. 11323.—Judgment affirmed.)

Court Rose No. 12, Foresters of America, of Spring Valley, Illinois, *et al.* Appellees, *vs.* Joe Corna *et al.* Appellants.

*Opinion filed June 21, 1917—Rehearing denied October 4, 1917.*

1. Injunction—*only question to be considered in a proceeding for contempt for disregarding injunction is whether the court had jurisdiction.* Where an injunction has been disregarded and there is a proceeding for contempt the only question to be considered is whether the court had jurisdiction to order the injunction, and the question whether the court erred or the power was improperly exercised is not involved.

2. Same—*an injunction void for want of jurisdiction may be disregarded but not because it is erroneous.* An injunction void because of want of jurisdiction in the judge who ordered it may be disregarded and the person disregarding it is not guilty of contempt, but a party enjoined cannot refuse to obey the injunction because it is erroneous or was improvidently granted, and if the bill upon which the order was granted is defective it must be tested by demurrer in court and not by disobedience to the writ.

3. Same—*equity has no regard for the method adopted if the injunction is violated.* A court of equity has no regard for the method adopted to evade an injunction if the order is substantially disregarded, and where parties enjoined from paying out money of a benefit society are advised by an attorney that they can do so under the guise of official acts they will not be protected if the injunction is evaded in that manner.

4. Same—*when amendment to bill does not affect temporary injunction.* An amendment changing the purpose of a suit for an injunction and the relief prayed for may render the temporary injunction on the original bill ineffective, but whenever an amendment is allowed which merely elaborates the facts, with no change in the character of the case, the injunction is not affected.

5. Contempt—*courts have power to enforce their orders and judgments by contempt proceedings.* The power of courts to enforce their orders and judgments by contempt proceedings is a necessary incident to the administration of justice, since if they were without power to compel obedience or to prevent unwarranted interference with the administration of justice they could not perform their functions or secure the rights of litigants.

6. Same—*when amendments to record of suit for injunction may be made on a contempt proceeding for disregarding the writ.*

On the hearing of a contempt proceeding for disregarding an injunction, where objections are made to the record óf the final decree in the suit for injunction' and it appears that said record was irregularly kept in some minor matters, the necessary amendments in that respect may be allowed and made.

APPEAL from the Appellate Court for the Second District;—heard in thát court on appeal from the City Court of Spring Valley; the Hon. HARRY W. McEWEN, Judge, presiding.

J. L. SPAULDING, for appellants.

GEORGE B. GILLESPIE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 10, 1915, appellees, Court Rose No. 12, Foresters of America, of Spring Valley, Illinois, James Savio and Andrew Savio, filed in the city court of Spring Valley their petition for a citation to the appellants, Joe Corna, Anton Vieno, Dominick Bobbio, John Salvetti, Joe Campasso and J. L. Murphy, to show cause why they should not be punished for contempt for violating an injunction of that court. The petition was afterward amended, and on May 10, 1915, an order was entered in accordance with the prayer of the petition. Service was had upon the defendants, who answered the petition, and upon a hearing the court found them guilty, adjudged them to be in contempt of the court, sentenced each of the defendants except J. L. Murphy to imprisonment in the county jail for the term of six months but to be relieved from imprisonment upon payment to the clerk of the court of the money paid out in violation of the injunction, and sentenced J. L. Murphy to imprisonment in the county jail for the term of thirty days but to be relieved from the imprisonment by paying to the clerk of the court $1700 paid to and received by him

in violation of the injunction. The defendants appealed to the Appellate Court for the Second District, where the judgment was affirmed with a modification as to the time when the imprisonment should commence, made necessary by the appeal and delay occasioned thereby. The Appellate Court granted a certificate of importance and an appeal to this court.

Where an injunction, order, mandate or decree of a court has been disobeyed or disregarded and there is a proceeding for contempt of the court for such disobedience or disregard, the only question to be considered is whether the court had jurisdiction to make the order or decree. Jurisdiction is the power to hear and determine a matter in controversy, and if the power existed, the question whether the court erred or the power was improperly exercised is not involved and errors of the court constitute no defense whatever. An injunction void because of want of jurisdiction in the judge who ordered it may be disregarded and the person disregarding it is not guilty of contempt, (*People* v. *McWeeney,* 259 Ill. 161; Ann. Cas. 1916B, 34;) but a party enjoined cannot refuse to obey the injunction upon the ground that it is erroneous or improvidently granted. If the bill upon which an injunction is granted is defective, it must be tested by demurrer in court and not by disobedience to the writ. The jurisdiction of a court of equity does not depend upon the correctness of the decision made, but an order made in the exercise of jurisdiction must be obeyed until the order is modified or set aside by the court making it or reversed in a direct proceeding by appeal or on error. (*Leopold* v. *People,* 140 Ill. 552; *Clark* v. *Burke,* 163 id. 334; *People* v. *Weigley,* 155 id. 491; *O'Brien* v. *People,* 216 id. 354; *Franklin Union* v. *People,* 220 id. 355; *Christian Hospital* v. *People,* 223 id. 244.) The power of the courts to enforce their orders and judgments is a necessary incident to the administration of justice, and if they were without power to compel obedience or to prevent un-

warranted interference with the administration of justice they could not perform their functions or secure the rights of litigants, however important. The only questions, there- fore, in this case, are whether the city court of Spring Val- ley had jurisdiction to make the order in question and whether it was violated by the defendants.

The injunction was ordered by the judge of the city court upon a bill of Robert J. Blum, James Savio and Andrew Savio against Joe Corna, Anton Vieno, Domi- nick Bobbio, John Salvetti, Joe Campasso and Court Rose No. 12, Foresters of America, of Spring Valley, Illinois, praying for the injunction. The injunction writ was issued on November 29, 1913, and commanded the defendants to the bill and their attorneys, solicitors, agents and servants to absolutely desist and refrain from selling, assigning, in- cumbering or otherwise disposing of the moneys, funds and property, real and personal, of Court Rose No. 12, For- esters of America, of Spring Valley, Illinois, until the fur- ther order of the court. The writ was returned served on each one of the defendants therein named on December 1, 1913, and they then had in their hands $2329.52 belong- ing to Court Rose No. 12, Foresters of America, of Spring Valley, Illinois. The defendants upon whom the writ was served took it to J. L. Murphy, an attorney, and asked him if the injunction enjoined them as officers of Court Rose, and he told them that his judgment was that no official act was enjoined; that he believed the law to be that an injunction writ could not restrain an official act of an offi- cer of a corporation, and his judgment was that the in- junction would not stop them from paying bills passed by the organization for expenses or anything out of the cor- poration. He then, acting as attorney, managed a proceed- ing by which they attempted to change the name of the corporation, Court Rose No. 12, Foresters of America, of Spring Valley, Illinois, to Court Rose of Spring Valley, and he acted as solicitor in the defense of the chancery

suit. Robert J. Blum, one of the complainants, died, and his death being suggested he ceased to be a party, and Court Rose No. 12, Foresters of America, became a complainant instead of a defendant. The bill alleged that the Foresters of America was a fraternal organization, composed of a supreme court, grand court and subordinate courts; that Court Rose was one of the subordinate courts and the defendants were officers of that court; that on November 24, 1913, a meeting of Court Rose was held and a majority then present illegally attempted to secede from the order of the Foresters of America; that the meeting was not properly called; that it was fraudulently called and held, and that the defendants threatened, as officers, to dispose of the funds and property of Court Rose, to the irreparable injury of the complainants, who were members of the society, and would do so unless restrained by injunction. On June 22, 1914, an amended and supplemental bill was filed, alleging the attempted change of name by the seceders and setting forth the provisions of the constitution and laws of the Foresters of America, showing the attempted secession to be illegal and void and that the funds and property of Court Rose No. 12 belonged to the remaining society and not to the seceding body. The defendants moved to dissolve the injunction and the motion was denied. After answer another motion to dissolve the injunction was made and denied, and appeals from both orders denying the motions were taken to the Appellate Court for the Second District, where the two appeals were heard together and the orders affirmed. (*Savio* v. *Vieno*, 193 Ill. App. 395.) The issues were referred to the master in chancery, who took the evidence and reported that on and prior to November 24, 1913, there was in the hands of the defendants $2329.52 in cash, funds and property of Court Rose, and that since that time said sum had been spent, disbursed and dissipated and that no part of it remained. The cause was heard on exceptions to the report,

279 – 39

which were overruled, and a decree was entered making
the injunction perpetual, and ordering the defendants, with-
in three days after service of a copy of the decree on their
solicitor, to turn over and deliver to Court Rose No. 12,
Foresters of America, or its solicitor, said sum of money.
An appeal from the decree was prayed but never perfected.

That the court had jurisdiction of the parties and the
subject matter and granted the injunction in the exercise
of such jurisdiction is beyond question.  On the hearing
of this contempt proceeding objections were made to the
record of the final decree, and it appears that the record
was rather irregularly kept in some minor matters, but on
objections being made, amendments were allowed and made,
which the court had a right to authorize.  (*Coughran* v.
*Gutcheus,* 18 Ill. 390; *Hansen* v. *Schlesinger,* 125 id. 230.)
The validity of the judgment for contempt does not, how-
ever, depend in any degree upon the question whether the
decree in the chancery cause was properly entered or not.
The case was heard and taken under advisement, and if
the decree was improperly entered that case is still under
advisement by the judge who heard it.

The defendants in their answer to the petition admitted
the service of the injunction writ, the denial of the motion
to dissolve the injunction, the affirmance of the order by
the Appellate Court and the payment and disbursement of
the moneys, but denied that such payments constituted any
violation of the terms of the injunction.  On the hearing
of the petition the following facts were proved:  On May
28, 1914, the defendants in the injunction suit paid J. L.
Murphy $100 of the funds in their hands and on July 28,
1914, they paid him $1600 of the same funds to apply in
payment for his professional services rendered and to be
rendered in the defense of the suit, and they also paid out
$500 more of the money on bills approved by the seceding
faction and afterward paid out the remainder of the fund.
It is argued that the disposition of the funds so proved

was not a violation of the injunction because of the method adopted to dispose of the fund and because of the approval of the bills as above stated. Corna was financial secretary, and Salvio, Bobbio and Campasso had control of the funds. Corna would sign a warrant on Vieno, the treasurer, who would obtain the money of Salvio, Bobbio and Campasso and pay it out in accordance with the warrant. Because the injunction did not, in terms, restrain Corna from issuing a warrant, or restrain Bobbio, Salvio and Campasso from delivering money to the treasurer to pay warrants drawn on him, or restrain Vieno, as treasurer, from cashing warrants drawn by Corna, it is claimed that the injunction was not violated. It is not denied that there was a valid and legal injunction in full force and effect restraining the defendants from disposing of the fund, and it was disposed of by the method stated. The argument is a mere verbal quibble of a character not entertained by courts of equity, which look to the substance of things and not to the method employed, and if such a distinction were recognized there would be an end to authority in courts. The defendants were proved guilty of violating the injunction. The defendant J. L. Murphy was no more entitled to violate the injunction, of which he admitted that he had notice, than the parties to the suit. His opinion that it would not be a violation of the injunction to pay out the money under the guise of officials acts and by the method employed neither protected him nor them.

The amended and supplemental bill and amendments thereto did not change the object of the suit but did nothing more than to elaborate the facts upon which the same relief was asked. Where there is a change in the purpose of a suit and in the relief prayed for, an amendment to a bill may render a temporary injunction ineffective, but whenever, pending an injunction, an amendment is allowed which merely sets out in detail the facts, with no change in the character of the case, the injunction is not affected.

(2 High on Injunctions,—4th ed.—sec. 1594.) Moreover, that question was considered on the appeal to the Appellate Court from the order denying the motion to dissolve the injunction, and by the statute the decision of the Appellate Court was final.

The total amount required to be restored is $2329.52, and any payment by the other defendants over and above $629.52 will reduce the amount to be paid by J. L. Murphy. If the whole amount is paid by the other defendants he will be relieved from any liability.

The judgment is affirmed.     *Judgment affirmed.*