[Crim. No. 2558. In Bank.—September 13, 1923.]

In the Matter of the Application of A. BRAMBINI et al. for a Writ of Habeas Corpus.

[Crim. No. 2559. In Bank.—September 13, 1923.]

In the Matter of the Application of ALFRED VOLPI et al. for a Writ of Habeas Corpus.

[S. F. No. 10623. In Bank.—September 13, 1923.]

A'. BRAMBINI et al., Petitioners, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF HUMBOLDT et al., Respondents.

[S. F. No. 10624. In Bank.—September 13, 1924.]

ALFRED VOLPI et al., Petitioners, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF HUMBOLDT et al., Respondents.

[1] NUISANCES — INTOXICATING LIQUORS — VOLSTEAD ACT. — The Volstead Act of its own force constitutes any place in this state where intoxicating liquor is illegally sold a public nuisance, subject to abatement by appropriate proceedings in the superior court, and such proceedings can be maintained by a district attorney of a county in the name of the United States.

———

1. Construction and effect of the Volstead Act, note, 10 A. L. R. 1553.

[2] Id.—Procedure—Federal Statute.—The procedural features of the Volstead Act, a federal statute, are not controlling in California of their own force.

[3] Id.—Wright Act.—The Wright Act of California (Stats. 1921, p. 79) did not adopt the procedural features of the Volstead Act, although it adopts the "penal provisions" of that act and prohibits and declares unlawful all acts prohibited and declared unlawful by the eighteenth amendment of the federal constitution or by the Volstead Act and provides that all such acts are subject to the same penalties provided by the latter act.

[4] Id.—Abatement Actions — Preliminary Injunctions.—The authority for the issuance of preliminary injunctions in abatement actions under said act must be found in the laws of the state.

[5] Id.—Special Proceedings.—The special proceedings provided by the legislature for the abatement of nuisances resulting from the illegal sale of liquor control over the general provisions of the law with relation to issuance of writs of injunction, and no preliminary notice of application for an injunction is required.

[6] Id.—General Law—Liquor Traffic—Constitutional Law.—The liquor traffic has always been considered a separate subject of legislation and statutes pertaining to that subject are therefore necessarily general laws as distinguished from "local and special" laws which may not be enacted regulating the proceedings of courts; and it follows that a law regulating the proceedings for the abatement of this type of a nuisance is a general law, although it may require a different sort of procedure than that obtaining in other cases, and such special procedure does not violate the provisions of the constitution against special procedure.

[7] Id.—Parties.—In actions to abate nuisances constituted by the illegal sale of liquor the district attorney of the county may sue either in the name of the people of the state or of the United States, but in the conduct of such litigation the procedure outlined in the state statute must be followed.

[8] Id.—Pleading — Notice — Jurisdiction.—In a proceeding for the abatement of a nuisance constituted by the illegal sale of liquor, the failure to allege the giving of notice to the property owner before suit, required by the state law, is a defect in the complaint which is not jurisdictional, because it goes merely to the sufficiency of the facts alleged as a basis for the injunctive relief asked for, and not to the power of the court to issue the injunction.

2. Federal constitutional and legislative provisions as affecting state legislation, notes, 19 Ann. Cas. 607; 10 A. L. R. 1587; 11 A. L. R. 1320; 26 A. L. R. 661.

[9] ID. — ERRONEOUS INJUNCTION — OBEDIENCE. — An injunction erroneously issued because of lack of an allegation in the complaint of notice to the property owner cannot be disobeyed with impunity, and disobedience thereof is contempt of court.

[10] ID.—CONTEMPT—PROCEEDINGS FOR — DISMISSAL — BAR. — A contempt is prosecuted by an "affidavit" under section 1209 et seq. of the Code of Civil Procedure, and the sections of the Penal Code relating to the amendment of complaints, indictments, and informations, contained in section 1387 of the Penal Code, do not apply to such prosecutions; and a dismissal of such a proceeding without prejudice is not a bar to a second one under section 1387 of the Penal Code, but if it were this would be a defense to be interposed in the trial court and an adverse ruling could not be reviewed on *habeas corpus* or on a writ of review.

[11] ID.—VIOLATION OF PRELIMINARY INJUNCTION—CONTEMPT—PENAL ACTS.—The provisions for the punishment for a contempt of court in the violation of a preliminary injunction in an abatement proceeding are penal provisions.

[12] ID.—FEDERAL LAW—ADOPTION BY WRIGHT ACT—PUNISHMENT.— The penal provisions of the Volstead Act were adopted by the Wright Act as a part of the law of California, and the Wright Act to that extent modified the statute of 1915 fixing the punishment at a less maximum and a higher minimum for the same offense.

[13] ID.—CONSTRUCTION OF WRIGHT ACT—CONTEMPT—PUNISHMENT.— Section 2 of the Wright Act authorizes the punishment for contempt of court provided in the Volstead Act.

[14] ID.—AFFIDAVIT FOR CONTEMPT—SUFFICIENCY OF FACTS.—Where an affidavit, charging contempt of court for violating a temporary injunction in a proceeding for the abatement of a nuisance constituted by illegally selling intoxicating liquors, alleges that the petitioner was a partner of two others who sold liquor to a person upon the premises owned by the partners, and that the petitioner was present on the premises and knew that the others were selling the liquor therein and that the sales were made in the regular course of the partnership business after notice of the preliminary injunction, the allegations are sufficient to give the court jurisdiction.

[15] ID.—SUFFICIENCY OF EVIDENCE.—It is held that the evidence in this case was sufficient to give the court jurisdiction to punish the petitioner for contempt of court.

9. Disobedience of void order as contempt, note, 1 **Ann. Cas.** 121; 16 **L. R. A. (N. S.)** 1063.

PROCEEDINGS in Habeas Corpus and in Writ of Review to annul judgments of the Superior Court of Humboldt County for contempt of court in violating preliminary injunctions in proceedings to abate nuisances in maintaining places for the illegal sale of intoxicating liquors. Petitioners remanded and orders affirmed.

The facts are stated in the opinion of the court.

Pierce H. Ryan, A. G. Bradford and R. P. Henshall for Petitioners.

. WILBUR, C. J.—The above-entitled matters, which for convenience may be considered together, involve an attack by writ of review and by *habeas corpus* upon a judgment for contempt for violating preliminary injunctions or restraining orders of the superior court of Humboldt County issued in proceedings to abate nuisances consisting of places maintained by the petitioners for the keeping and sale of intoxicating liquors. The abatement proceedings were begun December 12, 1922, after the election of 1922, whereat the people of the state upon referendum ratified the Wright Act of California (Stats. 1921, p. 79), which in turn adopted as the law of California certain features of the Volstead Act, the National Prohibition Enforcement Act [41 Stat. 305]. The Wright Act did not become effective until December 21, 1922, five days after the official declaration of the vote (Const., art. IV, sec. 1), and was not in force therefor when these abatement actions were commenced. It was in effect, however, on January 12, 1923, when the injunction order herein involved was issued by the superior court. It should here be said, however, that the district attorney, representing respondents, places his whole reliance for the validity of the injunction order and for the contempt proceedings and judgments upon the provisions of the Volstead Act, the United States statute, and does not rely at all upon the Wright Act, a California statute, which was adopted after the action was commenced; or upon the state act for the abatement of illegal liquor-selling places as nuisances (Stats. 1915, p. 236), while the petitioners, on the other hand, contend that the procedural

features of the Volstead Act do not apply to actions in the state courts; that the Wright Act has no application to these cases because they were commenced before the Wright Act became effective; that even if the Wright Act be considered as the basis of the preliminary injunctions or restraining orders, such act does not adopt either the procedural features of the abatement proceedings provided for by the Volstead Act, or the penalties provided for the violation of a restraining order, and that the state law for the abatement of such nuisances (Stats. 1915, p. 236) does not apply for reasons hereinafter to be stated.

The several questions thus presented and others subsequently to be noted arise out of the following facts:

The abatement proceedings were begun December 12, 1922, by the district attorney of Humboldt County, one against the petitioners Volpi, Pera, and Perrone, and one Quilici, alleged to be conducting an illegal liquor-selling establishment at 101 D Street, Eureka, California, and the other against Brambini and Maffia, conducting a hotel known as Flor D' Italia Hotel at 110 Second Street, Eureka. The same course of proceedings was followed in each case and for that reason we will not distinguish the cases until later in this opinion, where some points not common to each case will be considered. Preliminary injunctions were issued in each case without notice, upon the verified complaint, and a supporting affidavit. It is contended that although this procedure was proper under the Volstead Act, that under the California code (Code Civ. Proc., sec. 527), notice of the application for the preliminary injunction was essential to the validity of the temporary injunction, and that if the order be regarded as a restraining order which can be issued *ex parte,* under the terms of section 527 of the Code of Civil Procedure, it only remains in force under that section for the period of ten days and therefore the alleged violations of the injunctive order occurred after the restraining order, if it be regarded as such, had expired. It is contended that as a temporary injunction the order was void *ab initio,* and considered as a restraining order it had expired. Petitioners were found guilty of contempt of court in selling intoxicating liquors upon their respective premises in violation of the injunctive orders of the court, and a judgment was entered to

the effect that each be imprisoned for one year in the county jail and pay a fine of one thousand dollars.

[1] We have already determined that the Volstead Act of its own force constituted any place in this state where intoxicating liquor is illegally sold a public nuisance, subject to abatement by appropriate proceedings in the superior court and that such proceedings could be maintained by a district attorney of a county in the name of the United States. (*Carse* v. *Marsh*, 189 Cal. 743 [210 Pac. 257].) We did not determine in that case whether such proceedings were to be conducted in accordance with the general law of California concerning the abatement of nuisances (Code Civ. Proc., sec. 731; Stats. 1899, p. 103), or under the Statutes of 1915 (Stats. 1915, p. 236), or under the terms of the Volstead Act. That case was one to prohibit the superior court from hearing an alleged contempt arising out of the violation of a preliminary injunction issued in proceedings to abate such nuisance. We held that the superior court had jurisdiction to proceed with the contempt matter for the reason that it had jurisdiction to abate the nuisance "either by the means provided in said act [the Volstead Act] or by any other means which it sees fit in the exercise of its jurisdiction in equity to adopt." This conclusion does not relate to the procedure in arriving at the judgment of abatement, but only to the means of abatement, by injunction, or by closing the place or other appropriate means. Since that case was decided the Wright Act has been adopted.

[2] We think it so clear, under the authorities, that the procedural features of the Volstead Act, a federal statute, are not controlling in California of their own force, that we deem it unnecessary to do more than cite a few cases in support of that statement, for the question is not novel, having been acted upon by the various state courts in applying the federal employers' liability bill, each state enforcing the substantive rights thereunder according to its own course of procedure: *Employers' Liability Cases*, 223 U. S. 1, 56 [38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, see, also, Rose's U. S. Notes] ; *Carse* v. *Marsh, supra;* 12 C. J. 447, 483; 1 C. J. 984; *Russell* v. *Pacific Ry. Co.,* 113 Cal. 258, 261 [34 L. R. A. 747, 45 Pac. 323];

*Symmes* v. *Sierra Nevada Min. Co.*, 171 Cal. 427, 430 [153 Pac. 710] ; *Miller* v. *Lane*, 160 Cal. 90, 94 [116 Pac. 58].

[3] Nor do we think that the Wright Act adopted the procedural features of the Volstead Act. The Wright Act adopts the "penal provisions" of the Volstead Act and prohibits and declares unlawful all acts prohibited and declared unlawful by the eighteenth amendment or by the Volstead Act and provides that all such acts are subject to the same penalties provided by the Volstead Act. (Stats. 1921, p. 79.) There is nothing in these provisions, however, to indicate an intention to adopt the federal procedure in our courts. [4] We agree with the petitioners that the authority for the issuance of preliminary injunctions in such abatement actions must be found in the law of the state.

The petitioners rely upon the proposition that the orders for the violation of which the petitioners have been adjudged guilty of contempt were void under the terms of section 527 of the Code of Civil Procedure, because issued without notice required by that section of the code.

The procedure laid down by our legislature for the abatement of illegal liquor-selling places as nuisances is found in the Statute of 1915, at page 236. The petitioners dismiss this statute from consideration for the reason that it requires that before the abatement action is commenced a written notice must be served upon the owner of the premises notifying him of the existence of a nuisance upon the premises. This statute also provides that abatement proceedings shall be prosecuted by the district attorney in the name of the people of the state of California. Inasmuch as there is no allegation in the complaint to abate the nuisance to the effect that the property owner had been given the necessary notice and inasmuch as the proceedings were instituted in the name of the United States, instead of in the name of the people of the state as herein provided, it is contended that this state law for the abatement of such nuisances does not apply to these proceedings.

[5] It is clear that if the procedure for the abatement of such a nuisance provided by the law of the state is that contained in the Statutes of 1915, for the abatement of such nuisances, then the general procedure for the issuance of an injunction laid down in section 527 of the Code of

Civil Procedure does not apply. The two proceedings are at variance with one another in the very matter involved on this appeal. The Statute of 1915 (Stats. 1915, p. 237, sec. 3) provides for the issuance of a temporary writ of injunction to abate and prevent the continuance or recurrence of such nuisance whenever the existence of the nuisance is shown to the satisfaction of the judge by a verified complaint or affidavit. No preliminary notice of the application for the writ is required. The notice required by the state statute for the abatement of such nuisance is the one before the commencement of the suit notifying the owner of the property of the existence of the nuisance referred to above. It is clear that the special proceedings provided by the legislature for the abatement of nuisances of this type control over the general provisions of the law with relation to the issuance of writs of injunction (see *State* v. *Finlayson*, 41 N. D. 494 [170 N. W. 910]; *United States* v. *Auto City Brewing Co.* (D. C.), 279 Fed. 132), unless the fact that this particular proceeding is brought in the name of the United States relieves it of the requirements of the state statute concerning this type of abatement proceedings.

[6] Before taking up the consequences resulting from the bringing of the action in the name of the United States, it may be well to dispose of the contention of the petitioners that the state statute with reference to the abatement of such nuisances is a law attempting to lay down a special procedure in violation of the constitution of the state of California (Const., art. IV, sec. 25, subd. 3), and therefore is unconstitutional. We have already upheld a similar statute with reference to the abatement of houses of ill fame. (*Selowsky* v. *Superior Court*, 180 Cal. 404, 410 [181 Pac. 652].) The liquor traffic has always been considered a separate subject of legislation and statutes pertaining to that subject are therefore necessarily general laws as distinguished from "local and special" laws which may not be enacted regulating the proceedings of court. (Const., art. IV, sec. 25.) It follows that a law regulating the proceedings for the abatement of this type of a nuisance is a general law, although it may require a different sort of procedure than that obtaining in other cases. An extended discussion of this point we think is unnecessary, because,

under principles already laid down, it is clear that this special procedure does not violate the provisions of the constitution here invoked.

[7] Assuming, then, that the procedure laid down in our own abatement law controls in the issuance of injunctions for the abatement of such nuisances, we are immediately met by the contention that the proceedings should be instituted by the district attorney in the name of the people of the state of California as required by the state statute. This particular provision of the statute, however, is supplemented by the act of Congress giving the district attorney power to bring abatement proceedings to abate illegal liquor-selling places as a nuisance in the name of the United States. The statute, as we have held in *Carse* v. *Marsh, supra,* is applicable in the state of California and thus supplements the legislation of the state. Places for the illegal sale of intoxicating liquor are declared to be nuisances by the Volstead Act and declared to be nuisances by section 1 of the state act for their abatement. (Stats. 1915, p. 236, *supra.*) Section 2 of the state act for the abatement of such nuisances reads: "Whenever there is reason to believe that such nuisance is kept, maintained or exists in any county or city and county, the district attorney of said county or city and county, in the name of the people of the state of California, must, . . . " (and to this the Volstead Act adds: "or in the name of the United States may") "maintain an action in equity to abate and prevent such nuisance," etc.

The conclusion that the district attorney may sue in either name results from the fact that the federal statute is just as authoritative in the state of California (*Carse* v. *Marsh, supra*) as the state statute with reference to the power of the district attorney to bring suits to abate nuisances. In the conduct of such litigation, the procedure outlined in the state statute must be followed, as we have said above.

So far we have only disposed of the petitioners' contention that because this proceeding is brought in the name of the United States, the state statute does not apply. What we hold is that whether the proceeding is brought in the name of the United States or in the name of the people of the state of California, the procedure outlined in the state statute for the issuance of such injunction, controls. [8]

The next question presented is that arising from the fact that the state law requires that a written notice be given to the owner of the premises before the suit is instituted (Stats. 1915, p. 237, sec. 3, *supra*), while the Volstead Act does not require such notice. It is only necessary in the matters at bar to determine whether or not such notice is jurisdictional. If it is jurisdictional in the sense that the superior court would not have authority to issue the preliminary injunction without this notice, then the injunction in this case having been issued without such notice, is void, and the petitioners are entitled to discharge. On the other hand, if the failure to give such notice merely goes to the sufficiency of the complaint as a foundation for the temporary and permanent abatement of the nuisance, and if the error of the court in issuing the temporary injunction is an error committed in the exercise of its jurisdiction, the preliminary injunction in this case comes under the head of an injunction improvidently issued as distinguished from one utterly void and petitioners' remedy was not to violate the injunction, but to apply to the court for its dissolution and in default of such dissolution to appeal to the higher court for a reversal of the order of the superior court in issuing, or in failing to dissolve, the injunction. The authorities fully support the view that such a defect in the complaint is not jurisdictional, because it goes merely to the sufficiency of the facts alleged as a basis for the injunctive relief asked for, and not to the power of the court to issue the injunction.

[9] An injunction thus erroneously issued cannot be disobeyed with impunity. "If the bill upon which an injunction is granted is defective it must be tested by demurrer in court and not by disobedience." (*Court Rose No. 12, F. of A.*, v. *Corna*, 279 Ill. 605 [117 N. E. 144].) The same rule has been applied even when a temporary injunction has been issued without the required notice. In such a case (*People* v. *Mussatto*, 216 Ill. App. 519, 523, 524, 525) it is said: "Appellant misconstrues the law as laid down by the Supreme and Appellate Courts of this State when he states that a court is without jurisdiction to punish a party for contempt or violation of a temporary injunction issued without notice and without the respondent

having been served with summons, but where the respondent has been served with the injunction writ.

"In *Court Rose No. 12 F. of A.,* v. *Corna,* 279 Ill. 605 [117 N. E. 144], the court at page 607 says: 'Where an injunction, order, mandate, or decree of a court has been disobeyed or disregarded and there is a proceeding for contempt of the court for such disobedience or disregard, the only question to be considered is whether the court had jurisdiction to make the order or decree. Jurisdiction is the power to hear and determine the matter in controversy, and if the power existed, the question whether the court erred or the power was improperly exercised is not involved and errors of the court constitute no defense whatever. An injunction void because of want of jurisdiction in the judge who entered it may be disregarded and the person disregarding it is not guilty of contempt (*People* v. *McWeeney,* 259 Ill. 161 [Ann. Cas. 1916B, 34, 120 N. E. 233]); but a party enjoined cannot refuse to obey the injunction upon the ground that it is erroneous or improvidently granted. If the bill upon which an injunction is granted is defective, it must be tested by demurrer in court and not by disobedience to the writ. The jurisdiction of a court of equity does not depend upon the correctness of the decision made, but an order made in the exercise of jurisdiction must be obeyed until the order is modified or set aside by the court making it or reversed in a direct proceeding by appeal or on error. (*Leopold* v. *People,* 140 Ill. 552 [30 N. E. 348]; *Clark* v. *Burke,* 163 Ill. 334 [45 N. E. 235]; *People* v. *Weigley,* 155 Ill. 491 [40 N. E. 300]; *O'Brien* v. *People,* 216 Ill. 354 [108 Am. St. Rep. 219, 3 Ann. Cas. 966, 75 N. E. 108]; *Franklin Union* v. *People,* 220 Ill. 355 [110 Am. St. Rep. 248, 4 L. R. A. (N. S.) 1001, 77 N. E. 176; *Christian Hospital* v. *People,* 223 Ill. 244 [79 N. E. 72].) The power of the courts to enforce their orders and judgments is a necessary incident to the administration of justice, and if they were without power to compel obedience or to prevent unwarranted interference with the administration of justice they could not perform their functions or secure the rights of litigants, however important. The only questions, therefore, in this case, are whether the City Court of Spring Valley had jurisdiction to make the order in question and whether it was violated by the defendants.'

"Courts of equity have jurisdiction of proceedings to enjoin the maintenance of a nuisance. Section 38, ch. 43, Hurd's Rev. St. (J. & A., par. 4650) provides that 'all places where intoxicating liquor is sold in violation of any of the provisions of this act shall be taken and held and are declared to be common nuisances and may be abated as such.' " In that case the adjudication of contempt was affirmed.

To the same effect the supreme court of Tennessee in a contempt matter for the violation of a preliminary injunction in an abatement case (*State* v. *Ragghiauti,* 129 Tenn. 562 [167 S. W. 690]), said:

"If it be conceded that, under a proper construction of the Nuisance Act, a defendant is entitled to notice of an application for temporary injunction, nevertheless the failure to give him such notice is merely an error in procedure on the part of the court. Such an error is procedural only and not jurisdictional. By the act in question the chancery court is clothed with authority to deal with nuisances, such as plaintiff's business is declared by the act to be, and of course the court had jurisdiction of the defendant. That is to say, the court below had jurisdiction of the subject matter and of the person of defendant, and although the action of the court in issuing the temporary injunction may have been erroneous, as a matter of practice, it was by no means a void order which the defendant was at liberty to disregard, but was an order which the statute empowered the court to make. See note to *McHenry* v. *State,* 16 L. R. A. (N. S.) 1063.

"Speaking of the issuance of temporary injunctions, after discussing the rules with reference to same, the supreme court of West Virginia said:

" 'Violation of these rules regulating the exercise of the jurisdiction does not, any more than any other case of erroneous decision, make the action of the court *coram non judice.* To grant such an injunction when the state of the case, tested by the rules established for the exercise of jurisdiction, does not warrant it is nothing more than judicial error. It is not an act in excess of jurisdiction.' *Powhattan Coal & Coke Co.* v. *Ritz,* 60 W. Va. 395, 402 [9 L. R. A. (N. S.) 1225–1229, 56 S. E. 257, 260].

"Mr. High lays down the rule as follows:

" 'With whatever irregularities the proceedings may be affected, or however erroneously the court may have acted in granting the injunction in the first instance, it must be implicitly obeyed so long as it remains in existence, and the fact that it has been granted erroneously affords no justification or excuse for its violation before it has been properly dissolved. . . . Upon proceedings for contempt in this class of cases, the only legitimate inquiry is whether the court granting the injunction had jurisdiction of the parties and of the subject matter, and whether it made the order which has been violated, and the court will not, in such proceedings consider whether the order was erroneous.' 2 High on Injunctions (4th ed.), sec. 1416.

"Mr. Joyce says:

" 'Unless an injunction order is void upon its face for lack of jurisdiction on the part of the judge who granted it, it must be obeyed, however erroneous the granting of it may have been, until it is dissolved on motion or appeal or some other method of direct review in the action in which it was granted.' 1 Joyce on Injunctions, sec. 247.

"So at most the action of the court in granting this temporary injunction, without notice, was a mere violation of a rule of procedure. The temporary injunction was not with respect to a matter and parties beyond the court's jurisdiction, and it was therefore not an order which the defendant was at liberty to disregard."

The adjudication of contempt was affirmed.

The case of *Weaver* v. *Toney*, 107 Ky. 419 [50 L. R. A. 165, 54 S. W. 732], cited by petitioners is inapplicable because it relates to an election matter in which the mandatory preliminary injunction issued without notice practically determined the whole litigation without a hearing. The case of *Burns* v. *Huffman*, 181 Ind. 591 [105 N. E. 148], was on an appeal from a preliminary injunction issued to the chief of police and other officials to restrain them from exercising the duties of their office. *Smith* v. *People*, 2 Colo. App. 99 [29 Pac. 924], also cited by petitioners, was a case where the court issuing the injunction did not have jurisdiction of the subject matter of the action, which was land in another county. The decision of the district court of appeal, first division, second district, in *Maier* v. *Superior Court*, 61 Cal. App. 552 [215 Pac. 399], is also relied upon

by petitioners. That case held that a restraining order issued without a bond is void and its violation not a contempt of court. Assuming that the question was correctly decided it has no application to the cases at bar.

We think it clear, then, that the injunctive orders in the matters at bar were not void because the complaints on which they were issued failed to allege previous notice to the owner; and that, therefore, such orders were not to be entirely disregarded, but although improvidently and erroneously issued were to be obeyed until set aside or reversed.

[10] This being true, the petitioners were guilty of contempt of court in violating the temporary restraining orders. They were adjudged guilty under appropriate proceedings. Two points are made with reference to the validity of the judgments in the contempt proceedings, if it be conceded, as we have held, that the orders violated by the petitioners were not void. The first arises from the fact that affidavits charging such contempt were filed and upon motion of the district attorney the contempt proceedings so initiated were dismissed without prejudice to further action by the district attorney. Subsequently, the district attorney filed amended affidavits charging the same contempt and it is claimed that the dismissal of the first proceeding was a bar to the second proceeding because section 1387 of the Penal Code declares that a dismissal of a misdemeanor charge bars further prosecution unless made for the express purpose of amending the complaint in the action. It is sufficient in response to this claim to say that a contempt is prosecuted by an "affidavit" under section 1209 et seq. of the Code of Civil Procedure, and that the sections of the Penal Code relating to the amendment of complaints, indictments, and informations contained in section 1387 of the Penal Code do not apply to such prosecutions. While the "affidavit" may come within the definition of the Penal Code (sec. 806) defining a "complaint" and partakes of the character of a "complaint" (*Selowsky* v. *Superior Court*, 180 Cal. 404, 407 [181 Pac. 652]; *Frowley* v. *Superior Court*, 158 Cal. 220, 222 [110 Pac. 817]; *Hotaling* v. *Superior Court*, 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73]), is not referred to in the statute outlining the

summary method of procedure used here for punishing the offense as a "complaint," but as "an affidavit" (Code Civ. Proc., sec. 1211), and we hold that section 1386 of the Penal Code does not apply to the summary proceedings for the prosecution of contempt provided for in the Code of Civil Procedure, but relates to prosecutions in the mode and manner provided in the Penal Code. (See *Ex parte Karlson*, 160 Cal. 378 [Ann. Cas. 1912D, 1334, 117 Pac. 447].) If, however, it be conceded, as the petitioners contend, that the dismissal is a bar, it was but a defense to be interposed in the trial court, and the ruling of the trial court adverse to the petitioners cannot be reviewed on *habeas corpus* (*In re Harron*, 191 Cal. 457 [217 Pac. 728]), and it would follow cannot be considered on a writ of review.

The second question presented by the petitioners herein upon the assumption that the temporary restraining orders were valid is with reference to the extent of the punishment for the contempt. The power of the court to punish for contempt under the general law is limited to a fine of five hundred dollars and five days' imprisonment in the county jail. Under the state law for the abatement of such nuisances a violation or disobedience of an injunction is punished as a contempt of court by a fine of not less than two hundred dollars or more than one thousand dollars or by imprisonment in the county jail for not less than one month nor more than six months, or by both such fine and imprisonment. (Stats. 1915, p. 237, sec. 6.) It will be observed that this provision differs from that of the Volstead Act in that a fine cannot be less than two hundred dollars and the imprisonment cannot be less than one month, while under the Volstead Act no minimum is provided. The maximum also differs in that the imprisonment under the state law cannot be more than six months and under the Volstead Act may be one year. The question then is as to the effect of the Wright Act, which provides in section 1, after reciting the requirements of the federal constitution, "To that end, the penal provisions of the Volstead Act are hereby adopted as the law of this state; and the courts of this state are hereby vested with the jurisdiction, and the duty is hereby imposed upon all prosecuting attorneys, sheriffs, grand

192 Cal.—3

juries, magistrates and peace officers in the state, to enforce the same.''

[11] That the provisions for the punishment for a contempt of court in the violation of a preliminary injunction in an abatement proceeding are penal provisions must be admitted. Indeed, the petitioners here base their claim that the proceedings here are barred under the provision of section 1387 of the Penal Code largely upon the fact that the provisions for the punishment of a contempt are in the nature of provisions for the punishment of a crime and they are in effect provisions defining and punishing misdemeanors. [12] It seems clear, then, that these penal provisions of the federal law were adopted by the Wright Act as a part of the law of California, and, if that is true, the Wright Act to that extent modifies the statute of 1915 fixing the punishment at a less maximum and a higher minimum for the same offense. The two penalties cannot well stand together as they are inconsistent and the latter statute will therefore control.

[13] The petitioners urge that section 2 of the Wright Act does not purport to authorize the punishment for contempt of court provided in the Volstead Act. That section is as follows: ''All acts or omissions prohibited or declared unlawful by the eighteenth amendment to the constitution of the United States or by the Volstead Act are hereby prohibited and declared unlawful; and violations thereof are subject to the penalties provided in the Volstead Act.'' It is claimed that the contempt of the California court is not made punishable by the Volstead Act and it might with equal force be claimed that the act or omission constituting the contempt is not denounced as such in the Volstead Act, but rather the Volstead Act recognizes the general law that disobedience of an order of court is a contempt of court and fixes the punishment. It might be well doubted, therefore, whether under section 2 of the Wright Act the provisions for the punishment of contempt were adopted by the state of California, although it might well be argued that where a penalty is fixed for an act, as in this case in the Volstead Act, that the act itself, the contempt, is necessarily thereby denounced, or, to use the terms of the Wright Act, ''prohibited or declared unlaw-

ful.'' However that may be, it is clear that the penalty for the violation of a preliminary injunction in an abatement proceeding is fixed by the Volstead Act and is one of the penalties of that act and is adopted as the law of this state by reference in section 1 of the Wright Act which as already stated, expressly provides that the ''penal provisions'' of the Volstead Act are adopted as the law of this state.

In opposition to this conclusion counsel for petitioners urge that we ought not to construe the Wright Act as adopting the severe penalties of the Volstead Act without recognizing the fact that under the federal procedure there is an appeal from an adjudication of contempt and the contempt is prosecuted by information, while under our state law there is no appeal in a contempt matter. It is urged that if we adopt the penalties of the Volstead Act without also adopting the procedure indicated, that the California provisions will be more drastic than those of the Volstead Act. It is a sufficient reply to this suggestion to state that under petitioners' own argument the procedure in the federal court is not and cannot be adopted in the state court. We conclude that the penalties imposed in these cases at bar, although of the utmost severity, were within the jurisdiction of the trial court.

[14] We have now to determine whether or not the special points made in favor of certain petitioners which depend upon the evidence are well founded. With reference to Alfred Volpi, it is claimed that the affidavit charging the contempt is insufficient to give the court jurisdiction to punish him for that offense. It was alleged in the affidavit that Alfred Volpi, Louis Pera, and Joseph Perrone were copartners in the business transacted in the building on the premises and that they were the owners in fee of the premises; that on March 3d, March 5th, and March 6th, Louis Pera and Joseph Perrone sold the complaining witnesses intoxicating liquors upon the premises in question; that defendant Alfred Volpi was present in the premises on the dates and occasions mentioned and knew that the defendants Louis Pera and Joseph Perrone were selling the aforesaid intoxicating liquor in said building and on said premises, and that the sales were made in the regular

course of business of the copartners, and after notice of the preliminary injunction. We have here the allegation that this petitioner knew of the violation and that it was in the regular course of business of the copartnership of which he was a member. These allegations were sufficient to give the court jurisdiction. The testimony supported the allegation as to petitioner Volpi.

It is claimed that the evidence is insufficient to justify the adjudication of contempt in the case of Joseph Perrone.

[15] It appears from an examination of the entire record that the prosecuting witnesses were of the impression at the time they filed the affidavits alleging contempt that Joseph Perrone was one of the persons who sold liquor to them. Upon the trial they freely admitted that they were mistaken in the identity of Joseph Perrone. There is, however, other evidence in the record from which the trial court could hold that the petitioner Joseph Perrone was guilty of contempt. It was admitted that he was one of the three partners owning the hotel in which the liquor was purchased by the complaining witnesses. It appears from the evidence that the room in which the liquor was sold was so arranged that no one could enter except upon signal and that the door was opened by a string passing from the bar around the side of the room to a catch-lock on the door through which admittance was obtained, which string was operated from behind the bar. It is also to be inferred from the testimony of the complaining witnesses that a regular business of selling intoxicating liquors was carried on in that place and that the receipts from such business were deposited in the cash register. It is admitted by the petitioner, Joseph Perrone, that he was around the premises daily and one of the complaining witnesses testified that he was there upon the premises on March 3d, when he purchased intoxicating liquor, but it is not claimed that he was present at the time of the purchase and sale of such liquor. The district attorney in his argument relies wholly upon the proposition that the petitioner, Joseph Perrone, was one of the partners and that the sales of liquor were made by the copartnership. If the evidence went no further than this, it might be wholly insufficient to justify the judgment of contempt, but, as already stated, it appears not only that

this petitioner was a partner, but that he was actively engaged in the conduct of the business and daily present upon the premises, and that the preparations for the illegal sale of liquor by the establishing of a lookout, secret signals, and spring-lock could not well have escaped his attention if he was a man of ordinary perception. In addition to this, although neither party calls attention to the statement in the record, it is testified that on March 7, 1923, the petitioner Perrone sold liquor to one of the complaining witnesses. The fact that the date was not identical with the date stated in the affidavit was immaterial because such testimony would show a violation of the preliminary injunction by Perrone which was the basis of the judgment for contempt. The testimony was sufficient, if believed by the trial judge, to justify its conclusion that the petitioner, Joseph Perrone, knew of the illegal transactions and profited thereby. This evidence being sufficiently substantial to give the court jurisdiction to punish Joseph Perrone for contempt, we cannot inquire further into the matter upon a writ of review.

It is claimed that the orders adjudging Brambini and Maffia guilty of contempt were void because of some confusion in the number of the building at which it is claimed the offense occurred. It is sufficient to say that the description of the property was given in the complaint and in the preliminary injunction, and it was further identified by the name of the hotel in which it was alleged the nuisance was maintained. The fact is that the affidavit for the temporary injunction alleges that the defendants had in their possession liquor at 110 Second Street. The temporary injunction inadvertently described the premises as 101 Second Street. Inasmuch as there is no building at 101 Second Street and the premises actually intended were further described by the name of the hotel, with a description of the lot and the ownership of the same by the defendant, the variance was immaterial.

It is claimed that the service of the injunctive orders was void because not accompanied with an affidavit. This is entirely immaterial, because if the defendants knew the injunctions were issued they were guilty of contempt in violating such orders.

The petitioners will be remanded to the sheriff of Humboldt County and the orders under review are affirmed.

Waste, J., Myers, J., Seawell, J., Lennon, J., Lawlor, J., and Kerrigan, J., concurred.

Rehearing denied.

All the Justices concurred.

In denying a rehearing in S. F. No. 10623, the court filed the following opinion on October 10, 1923:

THE COURT.—The petitioners have applied for a rehearing and have urged as a ground for the rehearing the fact that the opinion of this court did not follow the argument of either of the parties and for that reason the petitioners had not had the opportunity or occasion to present the considerations opposed to the view announced by this court in its opinion. If the contentions advanced by the petitioners in their attack upon the opinion were sufficient to create a doubt in the mind of this court as to the correctness of its conclusion, we would, of course, under the circumstances grant a rehearing. Most of the reasons advanced by the petition for a rehearing were given due consideration in arriving at the conclusion announced in our decision.

In their petition for a rehearing the decision rendered by this court in October, 1922 (*Carse* v. *Marsh*, 189 Cal. 743 [210 Pac. 257]), is not discussed nor is it mentioned except in a quotation from our opinion in which that case is cited. In that case we held that the trial court had jurisdiction to punish for contempt for a violation of an injunction issued in an abatement proceeding brought in this state by the district attorney in the superior court of San Diego County in the name of the United States of America to abate an illegal liquor-selling place. This decision was based upon the proposition that the state constitution vested jurisdiction in the superior court to abate nuisances and that the Congress of the United States having declared places for the illegal sale of liquor to be nuisances, the jurisdiction to abate the same was vested in the superior court without regard to any local legislation expressly conferring jurisdiction on such court or fixing the procedure therein. We did not in that

case overlook the state statute (Stats. 1915, p. 236) expressly conferring such jurisdiction, nor did we there deal with the procedure in such cases for the reason that the sole question presented by the petitioner in that case was as to the jurisdiction of the superior court to entertain an action to abate such illegal liquor-selling place.

Due consideration of the decision in the case of *Carse* v. *Marsh, supra,* will answer some of the points advanced by the petitioners as a ground for a rehearing in this case. For instance, the jurisdiction to abate a nuisance is not derived from the state statute but from the constitution. This jurisdiction, we held in the case of *Carse* v. *Marsh, supra,* was vested in the superior court without any state legislation whatever. Such jurisdiction being thus vested by the constitution itself, could not be taken away even by an express statutory provision attempting so to do. We are satisfied with the discussion in our opinion upon the subject of the effect of the failure to give notice to the property holder that his property was being used as an illegal liquor-selling place.

The petitioners insist that the effect of our decision is to determine that Congress can amend a state statute. Of course, we announced no such conclusion. We merely called attention to the fact that it was held in the case of *Carse* v. *Marsh, supra,* that the district attorney could bring an abatement proceeding in the name of the United States of America, and that under our own statute he was authorized to bring such a proceeding in the name of the people of the state of California (Stats. 1915, p. 236, *supra*). We then held, as contended by the petitioners, that the procedure in the action to abate the nuisance was determined by the state law instead of being governed by the Volstead Act, thus in effect agreeing with the petitioners that whether the proceeding was instituted in the name of the United States of America or in the name of the people of the state of California, the procedure in the action was controlled by the state law, we differed with petitioners only in finding that procedure in the act of 1915 (Stats. 1915, p. 236, *supra*), instead of in the Code of Civil Procedure (sec. 527, Code Civ. Proc.).

The petition for a rehearing is denied.