**Harry Fishwick et al., Appellees, v. John L. Lewis et al., Appellants.**

**Gen. No. 8,480.**

HENRY WARRUM, CHARLES E. FEIRICH, MOSES PULVERMAN and GILLESPIE, BURKE & GILLESPIE, for appellants.

FLOYD E. THOMPSON, A. C. LEWIS, JOSEPH A. LONDRIGAN and ROY C. MARTIN, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The prior history of this case is contained in the opinion of this court in *Fishwick v. Lewis*, 258 Ill. App. 402, to which reference is made. That appeal was brought to this court from an order entered by the chancellor in the court below denying a motion made by appellants here to dissolve a temporary injunction restraining appellants from revoking or attempting to revoke, or carrying into execution any order purporting to revoke the charter of District No. 12; from deposing and suspending or removing from office or claiming that they have deposed or removed from office any of the complainants in the bill referred to; from interfering with the performance of the duties of the officers of District No. 12 and from setting up or attempting to set up a provisional government for said district. The question in that case was whether the court below had jurisdiction to grant the temporary injunction under the facts as shown by the bill and answer thereto and we held that the court had jurisdiction to grant the temporary injunction on the ground that property rights were involved and that a temporary injunction maintaining the *status quo* may properly be issued until the merits of the controversy could be determined upon a hearing, and the order of the chancellor denying a motion to dissolve the temporary injunction was affirmed.

Subsequently appellees here filed their petition in the court below for a citation on appellants to show cause why they should not be punished for contempt of court for violating the temporary injunction. Upon a hearing upon this petition the chancellor, while he found that a number of the appellants had violated the temporary injunction, discharged all except appellant John L. Lewis, against whom he inflicted a fine of $500, to reverse which order this appeal is prosecuted.

It is admitted by counsel for appellants that their acts were violations of the temporary injunction but they claim that appellees are estopped from seeking the enforcement of the injunction by their own acts subsequent to the issuance thereof. As stated by counsel for appellants; "The question presented reduces itself to a single question of fact, which is:—Since the injunction was issued, have the appellees, complainants in the original bill, changed the status the injunction was granted to preserve and severed their relations with the original organization?"

No motion was made by appellants in the court below to dissolve the temporary injunction, or dismiss the same, on the ground that the acts of appellees, after the temporary injunction was granted, changed the *status quo* and created the estoppel to have the injunction order enforced, but they, of their own volition, assumed to determine that such was the case and were free to violate the injunction.

In the case of *Court Rose v. Corna*, 279 Ill. 605, the court held: "Where an injunction, order, mandate or decree of a court has been disobeyed or disregarded and there is a proceeding for contempt of the court for such disobedience or disregard, the only question to be considered is whether the court had jurisdiction to make the order or decree. Jurisdiction is the power to hear and determine a matter in controversy, and if the power existed, the question whether the court erred

or the power was improperly exercised is not involved and errors of the court constitute no defense whatever." This rule has long been held as the law in this State. *Christian Hospital v. People,* 223 Ill. 244; *Lyon & Healy v. Piano Workers International Union,* 289 Ill. 176; *Vulcan Detinning Co. v. St. Clair,* 315 Ill. 40, and cases cited in the above. Upon the former appeal we held that the chancellor had jurisdiction to grant the temporary injunction and that question is *res adjudicata.*

There may be some exceptions to the rule as above announced as where a complainant may procure an injunction against a defendant restraining the latter from committing a continuing trespass upon his land and subsequently conveys the land to the defendant, or by an agreement, for a consideration or otherwise consents to such trespass, then such conveyance or agreement would *ipso facto* have the effect of dissolving the injunction.

Appellants have cited the case of *Holbrook v. Ford,* 153 Ill. 633, in support of their theory. In this case one Palmer obtained a judgment against the Powerville Felt Roofing Co., a corporation organized under the laws of the State of New York, and after an execution had been issued on said judgment and returned unsatisfied he filed a creditor's bill and Holbrook was appointed receiver of the books and accounts receivable, notes receivable, debts due and all choses in action of said defendant corporation, or held in trust for it, with the usual powers and duties of a receiver. Among the accounts due to the defendant corporation were two claims against firms in Nebraska and one against a firm in Missouri. Ford, being also a creditor of said defendant commenced attachment proceedings against said defendant in the courts of Nebraska and Missouri and garnisheed the firms in those States who were debtors of said corporation.

Holbrook notified Ford of his appointment as such receiver and claimed the right to collect said debts under his appointment and requested Ford to withdraw said suits and dismiss the garnishee proceedings. Upon a hearing upon a petition filed by Holbrook to have Ford punished for contempt of court on the ground that Ford by attaching and garnisheeing said claims was interfering with the property belonging to the receiver, it appeared that Holbrook as such receiver had appeared in the Nebraska courts and moved to be made a party defendant to the suits there pending between Ford and the Powerville Felt Roofing Co. which motion was granted and he was made party defendant with power to appear and assert his rights in said action. Under these circumstances the Supreme Court held: "We are inclined to think, that the answer thereby showed, in connection with the other circumstances heretofore mentioned, a good defense to the motion or petition for an attachment, on the ground that the action of the receiver in submitting to the jurisdiction of the foreign court with a view of having his rights determined there amounted to a waiver of the contempt." The decision in this case is wholly inapplicable to the facts in the case at bar.

Section 13 of Article XX of the Constitution of the United Mine Workers of America provided as follows: "Sec. 13. This constitution shall be in effect from April 1, 1924, until March 31, 1929, and can be amended only by a majority vote of the delegates attending the regular International Convention." The original bill in this case was filed October 11, 1929, and the temporary injunction was issued on the same day the bill was filed. In the original bill the constitution was made a part thereof and it was claimed as one of the grounds for relief that the constitution at the time appellant Lewis attempted to revoke the charter of District No. 12, had expired by its own terms and that

Lewis as president of the International Union of the United Mine Workers of America had no power to issue any such order. Subsequent to the issuance of the temporary injunction writ (the exact date of which we are unable to determine from the record) and prior to March 1, 1930, Fishwick and 20 others issued a call for a convention of the United Mine Workers of America as follows:

"Call for International Convention of the United Mine Workers of America to meet in Springfield, Illinois, March 10, 1930:

"Whereas, there is no international constitution. of the United Mine Workers of America and no law by which the activities can be governed, and

"Whereas, the former international officials have no legal right to exercise the prerogatives provided by the lapsed international constitution and now hold their respective positions merely by sufferance of the membership, and

"Whereas, the said usurping officials have no authority to call a convention and that authority lies solely with the membership of the United Mine Workers of America, and that membership desires that said United Mine Workers of America be recognized and revived so that it can again assume its former proud place among the labor unions of the world and can again give its members that protection for which it was first established, and

"Whereas, the members of the United Mine Workers of America, affiliated with the various Districts and representing the various coal mining regions on the continent, have formed an Organization Committee and have directed that committee to take the necessary steps for the rehabilitation of the United Mine Workers of America:

"Therefore Be It Resolved, that a convention of delegates representing local unions in good standing

with their respective organizations and representing groups of coal miners from localities where the organization has been destroyed because of the Lewis policies, and who are desirous of rebuilding the United Mine Workers of America, is called to meet in the City of Springfield, Illinois, on the tenth day of March, 1930, at 12 o'clock noon, for the following purposes:

"1: To establish an international organization of the United Mine Workers of America.

"2: To adopt an international constitution of the United Mine Workers that will place the control of the organization in the hands of the rank and file by restoring home rule to the districts; secondly, that will prevent the international officers from meddling in the affairs of self-supporting districts, and thirdly, that will place the ownership and control of the property of the districts, sub-districts, and locals in the hands of those who created it.

"3: To elect international officers of the United Mine Workers of America in accordance with the provisions of said constitution.

"4: To adopt ways and means to accomplish the complete reorganization of the United Mine Workers of America, to unionize the unorganized coal fields and stabilize the coal industry, and for the transaction of such other business as may properly come before such convention, and be it further

"Resolved, that local unions are entitled to one delegate for each one hundred dues-paying members or fraction thereof, and one additional delegate for each additional one hundred dues-paying members or major fraction thereof (but that no local union shall have more than five delegates), who shall vote the entire membership of such local union, and that groups of coal miners where the organization has been destroyed because of the Lewis policies but who meet the conditions of this call be entitled to delegates on the same basis, and be it further

"Resolved, that the secretary of this Organization Committee send this call to the Recording Secretary of all such Local Unions and coal miners as he can by diligent inquiry ascertain now to exist.

Organization Committee.

Alexander Howat
John H. Walker
J. M. Thornton
Oral Daugherty
August Dorchy
Peter Markunos
Fox Hughes
John Brophy
Adolph Germer
Harry Fishwick

George L. Mercer
Walter Nesbit
Joseph B. Cassasa
Carl Wright
Joseph Loda
Allan S. Haywood
F. W. Wenchoff
Gust Fritz
Joe Hartley
Brice Holland
Geo. W. Stouffer."

Pursuant to said call a convention was held in the City of Sprinfield and a constitution was adopted, Article I of which is in the identical language of the previous constitution and contains among other things the following: "The organization shall be known as United Mine Workers of America." At this convention Alexander Howat was elected president, Adolph Germer, vice president and John H. Walker, secretary-treasurer. The constitution adopted contains substantially the same provisions as prevailed in the old constitution. At no time have appellees attempted to set up an independent organization. Many of the local unions, districts and subdistricts as they existed under the old constitution have recognized the new constitution and the officers elected thereunder. Some, however, have maintained their allegiance to the old organization. It is claimed by appellants that the action of certain individual members of District No. 12 in signing the call for a new convention and in participating therein made them seceders from the United Mine Workers of America and thus have destroyed

the *status quo* which existed when the injunction was granted and cannot now avail themselves of the advantages thereof. With this contention, under the facts as shown by the evidence in this case, we cannot agree, but conceding the proposition to be true the remedy of appellants was to apply to the court to relieve them from the injunction and not seek relief from the terms thereof by violating them. In the case of *Breinmeyer v. Star Bottling Co.*, 165 Mo. App. 383, 147 S. W. 526, it was held: "Before going into the merits of this case, it may be well to state that much of the return of both of the respondents sets out facts which, if true, might be a ground for equitable relief in an independent proceeding by the respondents against the plaintiffs in the suit in which the injunction was granted. We do not understand that such facts are any excuse for violating the original injunction. If the respondents have any ground of equitable complaint against the plaintiffs in that original suit, the courts of law and equity are both open to them. . . . *This case, as far as the injunction is concerned, was closed when the order of injunction was made by this court* . . . and *the only question involved in the case, according to our judgment, is whether or not the defendants have violated that injunction.*"

In the case of *Emergency Hospital v. Stevens,* 146 Md. 159, 126 Atl. 101, it was held: "Certainly, where changes in the relations of the parties or the conditions upon which it is based, occurring after a final decree of the nature of that passed in this case, render its further operation unreasonable, unjust, oppressive or inequitable, the court which passed it must necessarily have the right to dissolve it, and *it is wholly unnecesary to resort to so disorderly a proceeding as the commission of a contempt to secure relief.*"

In *De La Mater v. Graves,* 69 Colo. 255, 193 Pac. 552, it was said: *"If facts arise which would justify a*

*vacation of the order, that is no excuse for disobeying the order.* The remedy of the party desiring to be relieved from the necessity of obeying the order is to take formal and due steps in the proceeding in which the order was made and not to impeach the order in a contempt proceeding brought to punish a disobedience thereof.'' In *State v. Haiman,* 100 Wash. 632, 171 Pac. 529, it was held: ''Even if it were a fact that the appellants became members of the corporation after the decree restraining them from interfering with the business and affairs of the corporation, it was still the duty of the appellants before violating the decree of the court in the original action to apply to the court to have the decree modified upon the changed condition, and not to violate the decree of which they had notice.'' In *St. Joseph Brewing Co. v. Hauber* (Mo.), 132 S. W. 54, in a similar case, it was held: *''As the case stands, this respondent has taken the law into his own hands, and presumed to pass upon the Brewing Company's rights and the authority of the court. To permit such course would be to invite confusion and disorder in the administration of the law.''* So also in the case of *Alcorn v. Newark & Hackensack Traction Co.* (N. J. Chan.), 48 Atl. 235, it was read: ''The only regular course for the defendants to have pursued, if they supposed the subsequently acquired rights to entitle them to be relieved from the injunction, was to have brought these rights to the notice of the court by an application to file a supplemental answer and to modify the injunction.''

In our opinion the only question before this court is whether there was a violation of the temporary injunction. That there was such a violation is not only proven but admitted and the chancellor did not err in finding the appellants guilty of contempt and the decree of the circuit court is therefore affirmed.

*Affirmed.*