Board of Junior College District No. 508, County of Cook and State of Illinois, Plaintiff-Appellee, v. Cook County College Teachers Union, Local 1600, and Norman G. Swenson, President, David Simonson, Assistant to the President, Howard A. James, Vice President, Leon Novar, Member of Negotiating Committee, as Individuals, as Officers of Said Union and as Members and Representatives of the Class of Members of Said Union, Defendants-Appellants.

Gen. No. 52,465.

First District, Fourth Division.

June 26, 1970.

Kleiman, Cornfield and Feldman, of Chicago, for appellants.

Sherman Carmell and Sheldon M. Charone, of Chicago (Carmell & Charone, of counsel), for amici curiae.

James P. Chapman, of Chicago, for James L. Coghlan, amicus curiae.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

This appeal is from an order finding defendants Cook County College Teachers Union, Local 1600 (hereafter called Union) and its president, Norman G. Swenson, guilty of contempt of court and imposing sentences of $5,000 fine on Union, $1,000 fine and 30 days in jail on Swenson.

For reversal, defendants contend that (1), the order exceeded the trial court's jurisdiction because it was based on a void temporary injunction; (2), the injunction order was erroneous; therefore, no judgment of contempt could be predicated on it; (3), the trial court erred in denying their petition for change of venue; (4), the trial judge arbitrarily selected defendant Swenson for punishment solely because he was president of Union; (5), much of the evidence was erroneously admitted, over objection and to defendants' prejudice; and (6), they were not proven guilty of contempt as required by law.

After this appeal was docketed, two labor organizations: Chicago Federation of Labor and Industrial Union Council (AFL–CIO), Joint Council No. 25, International Brotherhood of Teamsters, etc., were granted leave to appear as Amici Curiae, seeking reversal. In their brief, the Amici argue a point which forms one of defendants' arguments: that the trial court erred in denying Board's motion to dissolve the temporary injunction.

Plaintiff in this controversy, Board of Junior College District No. 508, County of Cook (hereafter called Board), operates junior colleges in the Chicago area under the authority of the Public Junior College Act, Ill Rev Stats 1965, c 122, § 101–1, et seq. In November 1966, Board had eight campuses, a total enrollment of about 34,505 students and a full-time teaching staff of approximately 665 teachers. By statute it was Board's duty to appoint teachers, determine their salaries, establish tenure, provide for teacher removal for cause, prepare and adopt budgets to administer the colleges on its campuses. On October 11, 1966, Board recognized Union as the exclusive representative of the full-time faculty with academic rank employed by Board, except deans, assistant deans, and central administration em-

ployees. Thereafter, Board and Union, through committees, began negotiations for a collective bargaining agreement.

November 30, 1966, Board filed a complaint for declaratory judgment and injunction alleging that Union and its members were threatening Board with a strike or concerted withholding of services, illegal acts which would violate the public policy of the state. Board prayed for a decree declaring that Union and its members could not advocate, induce or encourage any employee of Board to strike or engage in concerted withholding of services from Board in support of Union's proposals or to picket Board for the purpose of inducing a strike or withholding of services. On Board's application the day suit was filed, a temporary injunction issued restraining Union "[f]rom participating in, or causing, inducing or encouraging, any strike or other concerted withholding of service, or interference with the performance of service, by any employee of plaintiff, or from picketing, parading or patrolling at or in the vicinity of the junior college campuses maintained and operated by plaintiff for the purposes of inducing such strike or other concerted withholding of services."

Defendant Swenson knew of the injunction order the day it issued, although he did not receive or see a copy of it. That evening, November 30, Union held a meeting of its membership attended by more than 400 of Board's faculty. Swenson spoke. Members of Union, employees of Board, went on strike November 30 and picketed Board's campuses December 1 and 2, 1966, and on January 6, 1967. During this period, Swenson was seen either picketing or at the scene of picketing of Board's offices or campuses.

December 20, 1966, the attorney who represented Board moved to dissolve the temporary injunction. With the motion was presented a written stipulation between Board and Union which purported to settle their dispute.

The trial judge refused to grant Board's motion. Instead, he directed Board's attorney to prepare and file a petition for a rule on Union, Swenson and its other officers to show cause why they failed to comply with the temporary injunction. The petition was filed December 21; and a rule issued that day.

January 3, 1967, the attorney for Board filed a petition alleging that because Board had requested dissolution of the temporary injunction and the trial judge had ordered a petition for a rule on Union and its officers, he was placed "in a position of potential conflict of interest" which required appointment by the court of special counsel to present evidence in support of the rule. The court took the petition under advisement until January 9.

In the meantime, the trial judge requested but the State's Attorney of Cook County declined to proceed with the rule against Union and its officers, saying it was a civil matter. Then on January 9, 1967, the trial judge appointed John P. Coghlan, a member of the Illinois Bar, Amicus Curiae to investigate and report the facts and circumstances surrounding the conduct of Union and its officers "[c]oncerning any violation of the injunction of this court entered on November 30, 1966." The Amicus Curiae was directed to make a recommendation "[i]n connection herewith, to dismiss the rule to show cause heretofore entered or for leave to file such amendments thereto as he believes necessary."

On April 3, 1967 the Amicus Curiae filed a written report in which he recommended that an amended rule issue only against Union and Swenson "ordering and directing that they and each of them answer said amended rule to show cause within a date to be fixed by the court." The rule issued on April 3, returnable May 22, 1967. On May 1, defendants answered the rule. Then, on May 12, defendants were allowed to amend their answer to include allegations that, effective January 1, 1967, the parties entered into a collective bargaining

agreement to expire December 31, 1968. On May 22, 1967, the court heard the testimony of four witnesses called by the Amicus who, in addition, offered ten exhibits which were admitted. Defendants did not present any evidence. At the conclusion of the hearing, Union and Swenson were found guilty of contempt.

This finding, defendants contend, must be reversed because it was based on an unconstitutional and void temporary injunction. To support this contention defendants, with forcefulness and in great detail, raise questions concerning the sufficiency of the pleadings, Article II of the Illinois Constitution, the provisions of the First, Thirteenth and Fourteenth Amendments to the Constitution of the United States, and which require construction of the Illinois Anti-Injunction Act, Ill Rev Stats 1965, c 48, § 2a.

Despite the vigor with which they are urged, these questions are not before us. The trial court had jurisdiction over the cause because the complaint alleged facts which presented a justiciable matter. Ill Rev Stats 1965, Const Art 6, § 9. In this day, the Illinois Anti-Injunction Act cannot be construed to take away the jurisdiction of a circuit court to decide whether a temporary injunction shall issue. Whether the trial court rightfully or erroneously granted the temporary injunction, and whether the injunction order was constitutionally permissible are questions that cannot be litigated in a contempt proceeding. Cummings-Landau Co. v. Koplin, 386 Ill 368, 54 NE2d 462; City of Chicago v. King, 86 Ill App2d 340, 230 NE2d 41 and cases there cited. Therefore, since the trial court had jurisdiction of the subject matter and of defendants, the questions defendants can raise in this appeal are whether the order finding them guilty of contempt is supported by evidence and whether it conforms to those rules of law which govern such proceedings.

Before considering these questions we will resolve the point urged by defendants and by the Amici Curiae: that the trial court erred in denying Board's motion to dissolve the temporary injunction.

Defendants support this point with the argument that the controversy between the parties "[w]as clearly a labor dispute to which the injunction was directed . . ."; that Board, the party that obtained the original injunction order, was fully satisfied and waived its right to seek punishment for contempt. The Amici support this point with the argument that when Board returned to the trial court to obtain dissolution of the injunction order, defendants' contemptuous conduct had ceased. The Amici tell us that for the purpose of this argument we "[m]ay assume that: (1) Swenson and the Union knowingly violated the trial court's temporary injunction; and (2) the picketing violated Illinois law." These arguments are to the same effect; namely, that the contempt was moot at the time of its prosecution and that the contempt was strictly civil in nature. This is a concession with which we do not agree.

 "Contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized as sui generis, and may partake of the characteristics of both." People ex rel. Chicago Bar Ass'n v. Barasch, 21 Ill2d 407, 409, 173 NE 2d 417. It is generally said that criminal contempts are acts disrespectful of a court or its process, those which tend to bring a court into disrepute or obstruct the administration of justice. People v. Redlich, 402 Ill 270, 277, 83 NE2d 736. The line of demarcation between criminal and civil contempt proceedings is in many instances indistinct and even imperceptible. People v. Gholson, 412 Ill 294, 298–299, 106 NE2d 333. However, a useful test by which a civil contempt can be distinguished from a criminal one is the punishment

imposed. When punishment is purely punitive: imprisonment for a definite term, fine for a certain sum of money, the contempt is said to be criminal. When punishment is a remedial or coercive measure: commitment of a contumacious party until he complies with the mandate of the court, a fine until there is obedience to the court's order, the contempt is said to be civil. People v. Redlich, supra; Walsh v. Superior Oil Co., 50 Ill App2d 40, 199 NE2d 428.

█ In the case before us no coercive order was issued for the benefit of plaintiff; no request for the contempt proceedings was made by Board. The trial judge, in the exercise of his discretion, directed issuance of the rule in order to determine if defendants had willfully violated a duly issued court order. Punishments the court imposed were fines in sums certain and imprisonment of Swenson for a definite period. Thus, by the test of the cases, the proceedings were to determine whether defendants were guilty of criminal contempt of court. Their guilt had to be established beyond a reasonable doubt. People v. Panczko, 20 Ill2d 237, 170 NE2d 130.

█ Arguments pressed on us by defendants and by the Amici insist that the rule to show cause should never have issued and that defendants' conduct should have gone unpunished because Board's broad discretion "[t]o say what is best for the successful management and conduct of the schools . . ."; and its decision to overlook defendants' conduct (assumed arguendo to be contemptuous and illegal) should have been honored by the trial court. We think these arguments lack substance. Under no theory can a party that obtains an injunction bind the issuing court with condonation of contemptuous or illegal acts of those who violate the court's order. To give effect to such a theory would usurp the highest function of our courts.

428

"The rule of law . . . reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This court cannot hold that the [defendants] were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the [defendants'] impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." Walker v. City of Birmingham, 388 US 307, 320–321, 18 L Ed2d 1210, 87 S Ct 1824 (1967).

■■■ We are aware of the contemporary social problems presented by questions concerning the right of public employees to unionize. See Comment, Collective Bargaining for Public Employees, etc., 68 Mich L Rev 260 (1969); Bruff, Unconstitutional Conditions Upon Public Employment, etc., 21 Hast LJ 129 (1969); Burton & Krider, The Role and Consequences of Strikes by Public Employees, 79 Yale LJ 418 (1970). However, as judges we must remind teachers and public employees that the interests of unionism do not justify standing in defiance of law. If we do not do this, and if contemptuous and illegal conduct by teachers were condoned, either by school boards or by courts meekly acceding to requests made under pressure, there would be erosion and ultimately destruction of the high place in public esteem that unions enjoy in our society. Therefore, we conclude that the trial judge did not err in issuing the rule to show cause and appointing the Amicus Curiae. People v. Goss, 10 Ill2d 533, 141 NE2d 385.

Defendants contend that they were prejudiced by the refusal of the trial court to grant their verified pe-

tition for change of venue. They argue that a change of venue was a right to which they were entitled; and that the petition they filed was timely. Necessarily, to pass on this contention we must look to what transpired in the case before the petition was filed.

Defendants appeared in the trial court on December 20, 1966. On that day the trial judge refused to grant plaintiff's motion to dissolve the temporary injunction, a motion made by stipulation of the parties. The trial judge decided that a rule to show cause should issue against defendants. On his instructions, the attorney for Board presented the rule the next day, December 21. On January 3, 1967, the attorney for Board filed a petition for the appointment of special counsel. The court took this petition under advisement and requested the State's Attorney of Cook County to proceed with the rule against defendants. When this proved unsuccessful, the trial judge on January 9 decided to appoint the Amicus Curiae. January 12, as defendants say in their Abstract of Record, "[a]s soon as defendants learned the identity of the prosecutor . . ." of the rule, they filed a petition for change of venue alleging they feared the trial judge was prejudiced against them. They alleged that "[s]aid prejudice first came to the knowledge of these Petitioners on December 20, 1966." Thus, 23 days after the prejudice of the trial judge came to their attention, and after three important rulings in the cause: denial of the motion to dissolve the temporary injunction, issuance of the rule to show cause and appointment of the Amicus Curiae, defendants filed the petition for change of venue, a petition they renewed three months later on April 12, 1967.

■■■■■■ A petition for change of venue must be made at the earliest practicable moment. Commissioners of Drainage Dist. v. Goembel, 383 Ill 323, 50 NE2d 444; Hassell v. Backers, 341 Ill App 290, 93 NE2d 521. If filing of the petition is delayed until rulings on substan-

tive issues have been made, it comes too late. People v. Lawrence, 29 Ill2d 426, 194 NE2d 337; Pilgrim Holiness Church v. First Pilgrim Holiness Church, 115 Ill App 2d 448, 252 NE2d 1; Barnes v. Peoples Gas Light & Coke Co., 103 Ill App2d 425, 243 NE2d 855. For example, a petition comes too late when it is presented after denial of a motion to strike the complaint. Swanson v. Randall, 30 Ill2d 194, 195 NE2d 656. It would appear, therefore, that a petition for change of venue comes too late when it is presented after denial of a motion to dissolve a temporary injunction, a ruling certainly as substantive as denial of a motion to strike. That the court's denial of the motion to dissolve is considered substantive by defendants, themselves, is demonstrated by the fact that a major point in their brief in this court is devoted to the contention that this ruling was reversible error. We conclude that defendants' petition for change was untimely. It was filed long after the trial judge indicated his views concerning the necessity of proceedings to determine whether defendants were guilty of contempt of court. Under these circumstances, there is no merit to the contention that reversible error was committed when defendants' petition and its later renewal were denied.

Nor is there merit to the contention that Swenson was arbitrarily singled out for punishment. Defendants point out that the amended rule, in contrast with the original one, was directed against Union and only one individual, Swenson. It is said that this produced an invidious result: singling out Swenson solely because of his position as president of Union, not because of what he did. A court that grants an injunction is clothed with wide discretion in enforcing obedience to its order. Ash Co. v. Garment Workers' Union, 290 Ill 301, 306, 125 NE 258. Generally, the power to punish for contempt is discretionary, one that should be exercised sparingly and only when necessary to prevent actual, direct

431

obstruction of, or interference with, the administration of justice. 17 CJS, Contempt, § 57. Within these limits, dealing with contempts is within sound judicial discretion, subject to the provisions of law; and a trial court's determination with regard to alleged violations are final, unless there is a plain abuse of discretion. Janov v. Janov, 60 Ill App2d 11, 207 NE2d 691; People v. Kizer, 151 Ill App 6; Engleman v. Engleman, 145 Colo 299, 358 P2d 864 (1961); Fagan v. Timmons, 224 SC 286, 78 SE2d 628. From the contents of this record, we conclude that it was not abuse of discretion for the trial judge to order proceedings against only Swenson and Union even though other individuals may have engaged in the same conduct.

This brings us to defendants' contention that the evidence did not prove them guilty of contempt.

Concerning the quality of the evidence, defendants contend that much of it was erroneously admitted. One part of this contention concerns the testimony of Robert Nolte, a Chicago Tribune reporter who was present at Union's membership meeting of November 30. Nolte testified he heard Swenson say that the injunction was a "union busting device"; that they (Board's teachers) would not go back to work on Thursday, Friday or Monday until a binding collective bargaining agreement was reached with the College Board; that the pickets would continue to march; that he and other members of Union were prepared to go to jail if necessary. Nolte was then shown a Chicago Tribune article of December 1. He said it contained information he telephoned to his newspaper concerning events at the meeting. Nolte said that the article truly and accurately contained the statements made by Swenson. The article was offered in evidence; and defendants objected "on the grounds of relevancy." The objection was overruled and the article admitted as petitioner's exhibit 1.

In this court, defendants shift ground and argue that the ruling admitted prejudicial hearsay. This argument misconceives Nolte's testimony and the meaning of hearsay evidence. The article was shown Nolte to refresh his recollection of what occurred at the meeting. It was not used to prove the truth of what was said in it. If anything, the article was only cumulative of Nolte's uncontested testimony. Hester v. Goldsbury, 64 Ill App 2d 66, 212 NE2d 316.

The other part of the same contention is that prejudicial error was committed when the trial judge admitted in evidence a letter of December 21, 1966, from Swenson to the members of Union. Defendants complain that in finding them guilty, the trial judge made reference to this letter. They argue that because the rule did not allege facts concerning the letter of December 21, the evidence was beyond the scope of the rule, resulting in denial of notice and opportunity to be heard. Thus, defendants argue, they were denied due process of law.

The letter of December 21 was one of six exhibits admitted in evidence by agreement. When the trial judge inquired if there was any objection to them, counsel for defendants said, "Your Honor, I am not sure we are straightened out. In part, I am objecting. What I am saying is that all these documents should be introduced in evidence." The trial judge then said, "They are received in evidence there being no objection." Now, defendants argue that admission of this letter deprived them of constitutional rights.

A proceeding to determine whether a party is in contempt may be commenced by a petition; but the alleged contemptuous acts need not be set out with the same detail as is required in a criminal information or indictment. Hake v. The People, 230 Ill 174, 82 NE 561. With regard to particularity of allegations in a

433

petition for contempt, the rules of civil practice control. Daniel Boone Woolen Mills v. Laedeke, 238 Ill App 92; American Zinc Co. v. Vecera, 338 Ill App 523, 88 NE2d 116. The letter of December 21 was not admitted to prove what defendants did on that day; it was an admission by Swenson, binding on Union. The letter disclosed what defendants did during the period under inquiry: November 30 to December 5, 1966. The significant part of the letter was "[w]e are entitled to the same rights enjoyed by private employees; and that we must strike if necessary to guarantee the protection of these rights. We will not be cowed now or in the future by an arrogant Board that refuses to bargain in good faith, or by the threat of an injunction." Thus, this letter tended to prove that after issuance of the injunction, defendants were of a mind to violate it. Therefore, neither admission in evidence of the newspaper article nor of the letter dated December 21, 1966, was error.

Concerning the quantity of the evidence, defendants, proceeding on the theory that the contempt here, if anything, was a civil one, contend that it did not prove them guilty. They argue that the crucial evidence was Robert Nolte's testimony of Swenson's speech of November 30 and the letter of December 21. The former, they say, was not sufficient because Nolte could not recall Swenson's speech and had to rely on the news article; the latter, they insist, was exercise of free speech by Swenson.

This argument does not take into account the testimony of John William Gianopulos, Assistant to the Chancellor of the Chicago City College who testified that on December 1, 1966, outside his office at 64 East Lake, Chicago, he saw pickets, members of Union. One of the persons picketing was the defendant Swenson, with a placard in his hand. Nor does it include the testimony of Thomas O'Malley, a Chicago police officer who swore that on December 1, 1966, he went to the offices

of Board and saw approximately 40 adults, members of Union, picketing with placards. One of those picketing was Swenson who explained to O'Malley that members of his Local were negotiating a contract with Board. Swenson according to O'Malley said that other schools of Board were going to be picketed.

 Of particular significance, we think, are the six exhibits. These were letters sent by Swenson stating Union's position and its determination to strike against Board. A letter of December 5, 1966, told its members of the significant Union victory won as a result of the strike. It said: "This is a victory of which we can all be proud. We won from Board everything we struck for. In addition, the Board has offered us as initial evidence of its future good faith some initial concrete counterproposals to our proposed contract." When read together, these exhibits, all admissions by defendants, tended to show that after the temporary injunction issued, defendants engaged in the strike that was enjoined.

 Affidavits in support of the rule disclosed that as a result of defendants' conduct, between 66% and 85% of Board's teaching staff did not report for work on December 1 and 2, 1966. Classes were cancelled; students were denied education. The recited evidence, none contradicted by defendants, proved beyond a reasonable doubt that defendants were guilty of contempt of court. In re Block, 50 NJ 494, 236 A2d 589 (1967); City of New York v. DeLury, 23 NY2d 175, 243 NE2d 128 (1968); Board of Education of City of New York v. Shanker, 54 Misc2d 941, 283 NYS2d 548 (1967). The fines and sentence of imprisonment which the trial court imposed manifest exercise of reasonable discretion. The judgment is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.