THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, COUNTY OF COOK, Plaintiff-Appellee, *v.* COOK COUNTY COLLEGE TEACHERS UNION LOCAL 1600 *et al.*, Defendants-Appellants.—(MARY C. McELROY *et al.*, Intervenors.)

First District (1st Division)   No. 62619

Opinion filed October 18, 1976.

Gilbert Feldman, of Chicago, for appellants.

Roger J. Kiley, Jr., of Chicago, for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

The plaintiff, Board of Trustees of Community College District No. 508, County of Cook (hereafter "the Board"), has administrative authority over seven junior colleges in the City of Chicago. The defendant, Cook County Teachers Union, Local 1600, AFT AFL-CIO (hereafter "the Union"), is the collective bargaining representative of the full-time faculty members

employed by the Board. The individual defendants are officers or bargaining representatives of the Union.

This is an interlocutory appeal pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307) from orders entered by the circuit court during a strike by faculty members against the public junior colleges. The orders are: (i) a temporary restraining order entered on August 25, 1975; (ii) a further order entered on September 4, 1975, extending the temporary restraining order entered on August 25, 1975, to the close of court on September 9, 1975; (iii) an order entered on September 4, 1975, finding the individual defendants in contempt of the temporary restraining order entered on August 25, 1975, and imposing fines against the Union; (iv) an order entered on September 9, 1975, denying the oral and written motions of the defendants for a change of venue; and (v) a preliminary injunction entered on September 9, 1975, restraining the strike. The defendants also appealed from an order sentencing Norman G. Swenson, president of the Union, to a 5-month jail term, but the parties now agree that this appeal is moot, Mr. Swenson having been granted a pardon by Governor Daniel Walker.

The Board filed a verified complaint on August 25, 1975, alleging that the strike had begun that morning and was continuing. The complaint recited that the strike was causing irreparable injury by making it impossible for the colleges to operate. The Board sought a permanent injunction against the Union, its officers and members restraining them from striking. With the filing of the complaint, the Board filed a motion for a temporary restraining order based on the complaint plus the allegation that the irreparable injury caused by the strike "is occurring and will occur before a trial can be had."

At 9:50 a.m. on August 25, the attorney for the Board telephoned the attorney for the Union to inform him of the filing of the action, and that the Board would appear before the chancery assignment judge to request the assignment of the case to a judge of the chancery division of the circuit court so that a motion for a temporary restraining order could be presented. The Union's attorney asked the Board's attorney to let him know the name of the judge to which the case was assigned, and told him when advised he would appear in the judge's courtroom for the hearing on the temporary restraining order. The Board's attorney agreed to do so.

Shortly after 11 a.m., the Board's attorney presented the motion for the temporary restraining order to the judge to whom the cause had been assigned. The Board's attorney told the judge about his telephone conversation with the Union's attorney prior to the filing of the action, and that a second call was made to the Union's attorney to inform him of the name of the judge a few minutes before the motion was presented. After a brief discussion, the circuit court judge entered the temporary restraining

order at 11:20 a.m., making it effective until 10 a.m. on September 4, 1975. The order restrained striking, concerted withholding of services or picketing.

The Union's attorney arrived in the courtroom a few minutes after the temporary restraining order was entered. He informed the judge that he had objections to the order. He stated that the order should not have been entered prior to his arrival and that no irreparable injury was shown because the chancellor of the colleges had stated publicly that the commencement of classes could be deferred until after Labor Day. The Union's attorney also represented to the court that the temporary restraining order was not in fact an order designed to preserve the *status quo* because the college chancellor had rejected a Union offer to keep the terms of the most recent contract in effect during the collective bargaining negotiations. He informed the judge that on a previous occasion on which these parties were involved in a similar dispute an injunction was conditioned on the temporary preservation of the working conditions provided for under the expired contract. The judge who entered the temporary restraining order in the present case informed the Union's counsel he would not act without a written motion.

The strike and supportive picketing continued unabated through the afternoon of August 27, 1975. That afternoon, counsel for the Board informed the judge that the Board wished to file a petition for a rule to show cause why the defendants should not be held in contempt for violating the temporary restraining order, and the judge scheduled a hearing for 10:30 a.m. on August 28. On the morning of August 28, the Board's attorney informed the judge that it appeared the dispute would be settled, and therefore the filing of the petition for a rule to show cause did not appear necessary. The court, concerned over defiance of its order, directed the Board to file the petition and set a hearing to be held on September 2, 1975. On that day, defendants filed a motion to dissolve the temporary restraining order and a response to the petition for a rule to show cause. The court then set a hearing for September 4 at 10 a.m. on the rule.

During the hearing on September 4, the trial court overruled defendants' motion to dissolve the temporary restraining order and chose to proceed with the hearing on the rule. However, at a convenient breaking point in that evidentiary hearing, a motion submitted by the Board to extend the temporary restraining order which, by its terms, expired at 10 a.m. that day, was argued, but no evidence was received in connection with the motion. At 12:50 p.m. on September 4, the trial court extended the temporary restraining order through September 9.

The trial court then found the Union, Mr. Swenson and the other Union officers guilty of contempt for disobeying the initial temporary restraining order. The Union was fined $1,000 for each day the strike had continued

after entry of the temporary restraining order from August 25 to and including September 4, and $5,000 for every day commencing September 5 that the extended temporary restraining order was violated by the continuance of the strike. The question of sanctions against the individual defendants was deferred until September 9, the day the court fixed for a hearing on the issuance of a preliminary injunction.

On September 8, 1975, the Union filed a verified answer to the Board's complaint for an injunction, alleging that even if a public school teachers' strike was illegal, it did not follow that an injunction should automatically issue; rather the court should consider whether the employer acted in bad faith in its negotiations with the Union. The Union asserted that the Board had acted unreasonably, and prayed that in the event an injunction was entered, it should require the plaintiff to preserve the terms of the expired contract pending resolution of the dispute.

In support of its affirmative defense that the Board's failure to negotiate in good faith should preclude issuance of a preliminary injunction, the Union attempted to introduce evidence that the Board had used the temporary restraining order to bring about a deterioration in the working conditions of the faculty and undermine the bargaining position of the Union. The trial judge sustained objections to this evidence, ruling that the defendants' affirmative defense was irrelevant because the strike was illegal.

At the conclusion of the hearing on September 9, a preliminary injunction was entered. The court also sentenced Mr. Swenson to a 5-month jail term, again deferring sanctions against the other individual defendants. Subsequently, the court declined to punish the other individual defendants for contempt.

On September 9, when the Board's motion for a preliminary injunction was being considered, the defendants moved orally and then in writing for a change of venue on the grounds the trial court was prejudiced against them.

The questions raised by defendants on appeal are: Was the temporary restraining order of August 25, 1975, entered in violation of law; was it void and were the contempt orders entered pursuant to it a nullity; was the order extending the temporary restraining order invalid and void; did the trial court abuse its discretion by issuing the preliminary injunction; and did the trial court err in denying defendants' oral and written motions for change of venue?

■■ The temporary restraining order as extended has expired. However, it was the violation of this order which formed the basis for the contempt judgments. The defendants contend they were not required to obey either the temporary restraining order or extension because in granting the order and the extension the circuit court violated the Illinois

Injunction Act and because the order was transparently invalid. It is, therefore, necessary that this court consider whether the order was erroneously entered and extended or transparently invalid, and, if so, whether this excused compliance.

A temporary restraining order like a preliminary injunction is a remedy extraordinary in nature and should be granted only after serious consideration and strict adherence to the statutes controlling the issuance of such injunctive orders. (*Hill v. Village of Pawnee* (1973), 16 Ill. App. 3d 208, 209, 305 N.E.2d 740.) The law does not favor granting injunctive orders without notice sufficient to afford a defendant an opportunity to show it should not issue. (*Miollis v. Schneider* (1966), 77 Ill. App. 2d 420, 426-27, 222 N.E.2d 715.) Section 3—1 of the Illinois Injunction Act (Ill. Rev. Stat. 1975, ch. 69, par. 3—1) provides:

> "No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and hearing had thereon. Every temporary restraining order granted without notice * * * shall define the injury and state why it is irreparable and why the order was granted without notice."

Defendants claim the temporary restraining order was issued without adequate notice and that the order failed to state why the injury was irreparable and why the order was granted without notice.

Plaintiff's position is that defense counsel had sufficient notice because he was informed at 9:50 a.m. that the Board was going to seek an order. This argument is based on an excessively formalistic concept of notice. Meaningful notice must give a party a reasonable opportunity to be heard. (See *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652.) In this case, counsel for the parties agreed that the Union's counsel would be notified of the name of the judge to whom the case was assigned. Union counsel was in fact so notified. The judge and the plaintiff, with knowledge of the fact the Union counsel was on his way to the courtroom, proceeded with the entry of the temporary restraining order without bothering to wait for him. Under these circumstances the temporary restraining order was in effect an *ex parte* order, and the order failed to comply with the statute by stating why it was granted without notice.

Issuance of an *ex parte* temporary restraining order is permissible under the Illinois Injunction Act only if the delay caused by notice and a hearing will irreparably damage the applicant. Had the judge waited a few minutes for defense counsel, or provided a hearing before entering the temporary restraining order, this would not have damaged anyone. With or without

notice and a hearing, the following day was the earliest classes could have commenced. It is not sufficient to argue, as plaintiff does, that defense counsel was given an opportunity to state defendants' position when he arrived in court immediately after the temporary restraining order was issued. After an order has been entered, a judge may be reluctant to set it aside. We, therefore, agree with the defendants that the issuance of the temporary restraining order without notice and without an adequate explanation of why notice was not given violated the Illinois Injunction Act.

■■ Defendants also relying on section 3—1 of the Injunction Act (Ill. Rev. Stat. 1975, ch. 69, par. 3—1) challenge the validity of the order of September 4, 1975, extending the temporary restraining order. This section of the Act provides in part:

> "Every temporary restraining order granted without notice * * * shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period * * *. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order."

Section 3—1 of the Injunction Act is applicable to the extension granted in this case because the temporary restraining order here, unlike that in *Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B* (1976), 63 Ill. 2d 514, 349 N.E.2d 36, was issued without sufficient notice. The renewal of the restraining order a few hours after it expired by its own terms was, therefore, a technical error. A more serious error was the failure to set down the motion for a preliminary injunction for hearing at the earliest possible time. The Board's argument that the integrity of the court required giving the contempt proceedings precedence over a hearing on the preliminary injunction is inconsistent with the statutory requirement that the injunction hearing take "precedence of *all* matters except older matters of the same character * * *." (Emphasis added.) If it was necessary to continue to restrain the strike, this should have been done through a preliminary injunction issued after a hearing, rather than by extension of the temporary restraining order.

■■ Defendants contend that because the circuit court failed to comply with the Illinois Injunction Act in entering the temporary restraining order

and its extension, the defendants could ignore them with impunity, and that they were not in contempt. The rule is well established that when a court of equity issues an injunction with jurisdiction over the subject matter and the parties, such an injunction, however erroneous, must be obeyed until it is set aside. (*County of Peoria v. Benedict* (1970), 47 Ill. 2d 166, 170 265 N.E.2d 141, *cert. denied* (1971), 402 U.S. 929.) Any error in such an injunction or its entry is not subject to attack in a contempt proceeding. (*Board of Junior College District No. 508 v. Cook County Teachers Union, Local 1600* (1970), 126 Ill. App. 2d 418, 426, 262 N.E.2d 125, *cert. denied* (1971), 402 U.S. 998.) This is even true in the case of injunctions which might deprive persons of constitutional rights. Thus, in *Walker v. City of Birmingham* (1967), 388 U.S. 307, 18 L. Ed. 2d 1210, 87 S. Ct. 1824, defendants were held in contempt for violation of an injunction based on an ordinance which the Supreme Court conceded presented substantial constitutional problems, and which the Supreme Court 2 years later in *Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 22 L. Ed. 2d 162, 89 S. Ct. 935, held to be so vague and unclear as applied to those who had been defendants in *Walker* as to be unconstitutional. Although the conviction of those who disobeyed the injunction was affirmed in *Walker*, their conviction for violation of the ordinance was reversed in *Shuttlesworth*.

■■ In this case, the complaint alleged a strike by public employees and this presented a justiciable matter; thus, the trial court had jurisdiction over the subject matter (*County of Peoria v. Benedict* (1970), 47 Ill. 2d 166, 171, 265 N.E.2d 141, *cert. denied* (1971), 402 U.S. 929) and over the defendants who had knowledge of the entry of the temporary restraining order. (*Board of Education v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 445, 264 N.E.2d 18, *cert. denied* (1971), 403 U.S. 904, 29 L. Ed. 2d 679, 91 S. Ct. 2203; *Board of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600* (1970), 126 Ill. App. 2d 418, 424, 426, 262 N.E.2d 125, *cert. denied* (1971), 402 U.S. 998, 29 L. Ed. 2d 165, 91 S. Ct. 2168.) In failing to give defendants effective notice prior to entry of the temporary restraining order and to state why that order was issued without notice, the circuit court committed error. The extension of the temporary restraining order after it had expired by its terms and the failure to set a hearing on the motion for a preliminary injunction prior to the extension of the temporary restraining order were also improper. But these errors did not void either the temporary restraining order or its extension; neither did they invalidate the contempt proceedings based on these orders. (*Board of Education v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 445-46, 264 N.E.2d 18, *cert. denied* (1971), 403 U.S. 904, 29 L. Ed. 2d 679, 91 S. Ct. 2203; *People v. McWeeney* (1913), 259 Ill. 161, 169, 102 N.E. 233;

*Christian Hospital v. People ex rel. Murphy* (1906), 223 Ill. 244, 248-50, 79 N.E. 72; *East Side Health District v. Village of Caseyville* (1963), 38 Ill. App. 2d 438, 444, 187 N.E.2d 534.) See also *Pennsylvania R.R. Co. v. Transport Workers Union of America* (3rd Cir. 1960), 278 F.2d 693; *County of Lake v. Spare Things* (1975), 27 Ill. App. 3d 179, 184, 326 N.E.2d 186.

■■ The only possible exception to the rule that error in an injunction which the court had jurisdiction to enter does not excuse disobedience of it is where the injunction is "transparently invalid" or has only frivolous pretence to validity. (See *Walker v. City of Birmingham* (1967), 388 U.S. 307, 315, 330, 18 L. Ed. 2d 1210, 87 S. Ct. 1824; *United Mine Workers Hospital v. United Mine Workers* (1972), 52 Ill. 2d 496, 501, 288 N.E.2d 455.) There was no transparent invalidity here. While disagreeing with plaintiff's contention that defendants had sufficient notice, we cannot characterize this argument as frivolous. Moreover, the trial judge might have interpreted *dicta* in *Kankakee Federation of Teachers* as indicating that notice need never be given when a pending strike by public employees is alleged. Although we do not agree with this interpretation,[1] it is not a frivolous reading of that opinion. We, therefore, conclude that the facts presented do not demonstrate transparent invalidity in the temporary restraining order.

■■ The temporary restraining order and its extension should be reversed. Even though it has expired, we have considered its validity in ruling upon the contempt judgments and the record is complete enough to lead to the conclusion that it was erroneously granted and extended. In view of the degree of public concern in the issuance of temporary restraining orders without proper notice as well as in curtailing abuses in the issuance of such orders as reflected by section 3—1 of the Illinois Injunction Act, we do not regard this issue as moot. But, notwithstanding the errors in the issuance of the temporary restraining order and in its extension, the judgments for contempt based upon the order must be affirmed.

With respect to the preliminary injunction, the defendants' argument is that assuming public employee strikes are illegal and subject to being enjoined, a court should nevertheless exercise its discretion against the issuance of an injunction if a school board negotiates with teachers in bad faith. As evidence of the Board's bad faith, defendants offered to prove that (i) after the issuance of the temporary restraining order the Board reduced the offers it had previously made in settlement negotiations with the Union, and (ii) the Board was requiring that the teachers return to

---

[1] *Kankakee Federation of Teachers* did not deal with a situation where a chancery judge literally had only to wait a few minutes for defendants' counsel to arrive, and where the college chancellor had publicly stated that he was authorized to delay the opening of classes until more than a week after the temporary restraining order was entered.

work under working conditions less favorable than those provided for by the expired contract for the previous academic year. They argue on the basis of this offer of proof that the preliminary injunction was improperly granted.

■■ No contempt order was based on a violation of the preliminary injunction; thus, this court need not consider the propriety of the preliminary injunction for the purpose of deciding whether contempt judgments should be upheld. The controversy to which the preliminary injunction relates no longer exists, the strike having been long settled. We regard the issue of the propriety of the issuance of the preliminary injunction as moot even though the degree of public concern in that issue is great and the situation which triggered the injunction is capable of repetition. The reason for this conclusion, notwithstanding the public interest exception to the doctrine of mootness, is that, assuming bad faith negotiations by the Board might preclude a preliminary injunction, the record is so factually incomplete on the existence of bad faith that it would be impossible for this court to reach a conclusion on this issue. Because the trial court excluded the evidence offered by the Union, the Board offered no evidence to rebut the Union's offer of proof. In the absence of evidence of the Board's version of the negotiations, we obviously could not conclude that the Board had acted in bad faith. The strike having been settled, it would be impractical to remand this case for the purpose of amplifying the record. What was said in *Save-At Builders Products Co. v. Federation of State, County & Municipal Employees* (1973), 13 Ill. App. 3d 846, 848-49, 301 N.E.2d 67, is applicable here.

> "In this particular case, we feel it is impossible to consider the issue as a public interest exception to the rule of mootness, not because of the issues raised, but because of the sketchy and ambivalent character of the evidence arising in large part from the procedure in the lower court."

The appeal from the order entering the preliminary injunction should, therefore, be dismissed as moot.

Finally, defendants contend that the chancellor erred in refusing to grant defendants' oral and written motions for a change of venue and that this refusal nullified all subsequent proceedings. The Illinois Venue Statute provides in part:

> " * * * A petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, provided. that if any grounds for such change of venue occurs thereafter, a petition for change of venue may be presented based upon such grounds." (Ill. Rev. Stat. 1975, ch. 146, par. 3.)

In this case, the motions for change of venue came on September 9, 1975, after there had been a hearing on the rule to show cause and after the trial

court found the defendants to be in contempt. Defendants, however, contend their oral motion was based not on the venue statute, but on the due process clause. They also contend that their written motion was justified by the statutory provision allowing a motion for a change of venue after a substantial issue in the case has been adjudicated, provided that the grounds for the change of venue arise after such an adjudication.

The oral motion was not based on any alleged personal prejudice by the judge toward the defendants, but rather on the theory that the judge's mind was closed on a point of law. The motion was improper under the Venue Act because it was not in writing, not timely and it failed to allege personal prejudice. See 36 Ill. L. & Pr. *Venue* §13, at 14 (1958); *Peck v. Rockford Life Insurance Co.* (1973), 9 Ill. App. 3d 568, 570, 292 N.E.2d 528.

Nor have defendants demonstrated that they were deprived of due process of law. In some instances when defense counsel referred to cases from states other than Illinois which supported his argument that bad faith by the Board should preclude injunctive relief, the judge cut off this line of argument, stating that he considered these cases to be contrary to Illinois law and therefore irrelevant. No authority cited by defendants held that a judge's expression of his view on a question of law deprives a litigant of due process.

■■ Defendants' handwritten motion for a change of venue read as follows:

"Defendants-Respondent apply for a change of venue on the grounds that the court is prejudiced against them."

When, as in this case, the time for an automatic change of venue on a general allegation of prejudice has expired, a party must set forth the grounds on which his claim of prejudice is based. (*Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 311 N.E.2d 673.) The written motion was insufficient in this regard, and it was, therefore, properly denied.

We are aware of the complex issues involved in public sector labor relations. We also realize that, as defendants pointed out in the trial court, at the time this strike was taking place, Chicago public elementary and high school teachers were also striking, and no injunctive relief was sought against them by the Chicago Board of Education. This presents the appearance of uneven public administration, especially because strikes by elementary and high school teachers are at least as harmful to the public as strikes by college teachers. Nevertheless, it is our duty as judges to apply the established principle that an injunction, right or wrong, must be obeyed until set aside. The errors of the trial court did not deprive it of jurisdiction, and they neither excused nor justified disobedience of injunctive orders.

■■ Although the findings of contempt must be affirmed, we have concluded that several mitigating circumstances warrant the reduction, pursuant to Supreme Court Rule 615(b)(4), of the sanctions for criminal contempt for violating the initial temporary restraining order to and including September 4, 1975. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4).) These circumstances include the failure to give adequate notice to defendants and the fact that three of the days covered by the temporary restraining order constituted the Labor Day weekend, when no classes would have been held even had the strike been called off. Consequently, the fines imposed for criminal contempt are reduced from $1,000 a day to $100 a day.

■■ The $5,000 a day fines for each day the strike continued after September 4, 1975, while the temporary restraining order remained in effect were civil in nature, and were designed to coerce the defendants into obeying the extended temporary restraining order. We cannot say that the fines designed to accomplish this objective were excessive or that the trial judge abused his discretion in imposing a fine of $5,000 per day for this purpose.

The temporary restraining order and the order extending it are reversed. The findings of contempt and the fines imposed therefor, are affirmed, except that the fines of $1,000 a day for each day the strike continued after entry of the temporary restraining order and up to September 4, 1975, are hereby reduced to $100 a day. The appeals from the preliminary injunction and from Mr. Swenson's contempt conviction and sentencing are dismissed as moot.

Reversed in part; affirmed in part, as modified; dismissed in part as moot.

BURKE and O'CONNOR, JJ., concur.